State *v.* Merrit.

THE STATE *vs.* LUCIUS S. MERRIT.

A committee of the original proprietors of lands in the town of *W*, appointed to lay out and divide the lands owned in common, in the year 1752 surveyed and laid out a highway three rods wide, and the highway had ever since been used and repaired as a public highway. Held that, although the committee had no power to establish a legal highway, yet their act, accepted by the proprietors, was a dedication of the land to the public for a highway, and that their report and survey were admissible for the purpose of proving the existence and width of the highway.

To constitute a nuisance by an erection on a public highway, it is not necessary that it be across the traveled path.

Any erection which renders a highway less commodious is a nuisance at common law, and our statute on the subject was not intended to narrow the rule.

COMPLAINT for a nuisance in the erection of a fence within the limits of a public highway in the town of Windsor, brought originally before a justice of the peace, and appealed by the defendant to the Superior Court in Hartford county, and there tried to the jury, on the plea of not guilty, before *Loomis, J.* The jury rendered a verdict of guilty, and the defendant moved for a new trial for error in the rulings and charge of the judge, and on the ground that the verdict was against the evidence. The case is sufficiently stated in the opinion.

*Goodman* and *Freeman,* in support of the motion.

*Hamersley,* contra.

HINMAN, C. J.   The defendant was convicted of having erected a fence upon a common highway in the town of Windsor, to the common nuisance of the citizens of the state; and after such conviction in the Superior Court he brings his case before us on a motion for a new trial for a verdict against evidence, and also for the errors of the judge in admitting improper evidence, and in charging the jury.

First, in respect to the error claimed in the admission of evidence.  To prove the existence and limits of the highway in question, the attorney for the state offered what purported to be a survey and lay-out of it as a highway by a committee of the proprietors of the common and undivided lands on the west side of "The Great River," made in 1752 and recorded on the proprietors' book in 1753, accompanied with evidence that the highway so laid out had ever since been used and occupied as a public highway.   This was objected to on the ground that neither towns nor the proprietors of lands had any authority in 1752 to lay out highways; and also on the ground that the action of the committee in laying out this highway exceeded their powers, it appearing upon the face of the report itself, as is claimed, that the committee were only appointed to lay out and divide the common and undivided land on the west side of the Great River, and not for the purpose of laying out highways; and *Fowler* v. *Savage*, 3 Conn. R., 90, is cited in support of these claims. ·

But the answer to this is, that the report was not offered as any evidence of a legal laying out of the highway.  As such it was doubtless inadmissible.  But the proprietors of lands could always dedicate them, or any portion of them, to the public use as highways, and if the public accepted of such dedication the lands thus dedicated became legal highways. The history of the state, as known to every intelligent man, shows that in the early settlement of it, when the lands were usually granted to companies of individuals called the proprietors of lands, there being usually one such company in each town, these proprietors, acting as if they were corporate bodies, from time to time surveyed and set out to individual proprietors in severalty portions of the land thus held in com-

mon, and in connection with these allotments in severalty public ways were always surveyed, and the lands thus surveyed were reserved for public use as highways. And in most cases they have remained open public highways ever since, and as such have been kept in repair. And there is frequently no other record of the existence of these highways than such as may have been made upon the proprietors' books. This reservation of them as highways by the proprietors of the lands would seem to be as formal an act of dedication as could well be made. And although it does not appear that this committee was appointed for the purpose of dedicating lands to be used as highways, yet the fact that they assumed to do it, and that proprietors' committees for allotting lands in severalty to individuals usually did it, especially in connection with the further fact that the highway as surveyed by this committee has ever since been used as a highway, proved clearly enough that the proprietors recognized the act of their committee as their act, and amounted to a ratification of it as a dedication of the land in question as a highway by the original proprietors and owners of the soil.

The committee, it appears, laid out the highway three rods wide, and the acceptance of it by the public use, and the repair of it as a highway, while they established the fact that there was a highway there, yet, of themselves alone, did not show the width of it; but this act of the committee, acquiesced in by the proprietors, shows the boundaries of the dedication, and consequently of the highway which the public accepted, in the same manner that a void deed may sometimes be given in evidence, for the purpose of showing the extent of the possession that a party has been claiming under it.

But the refusal of the court to charge the jury, that to constitute an offence under the statute the fence must be erected across the highway, is complained of. The erection of a fence within the limits of the highway comes clearly within the language of the first section of the statute to prevent nuisances. Gen. Statutes, p. 603. This section prohibits the placing of "any stones, timber, wood, rubbish or any other thing *in a highway*." And most obviously a mere encroach-

ment upon some portion of the highway limits may, by being placed in the traveled path, as effectually obstruct the passing of carriages as if it extended across the whole highway ; and in the case of *State* v. *Knapp*, 6 Conn. R., 415, it was laid down by this court that the erection of a wall extending ten feet into a highway, but leaving sufficient room to pass and repass safely, was a nuisance under this act.   And any thing placed in the highway, especially any permanent erection like a fence, was held in the case of *Hubbard* v. *Deming*, 21 Conn. R., 356, to be *prima facie* an obstruction and a nuisance. Besides, the erection of a fence, or indeed of any thing in a highway, which renders it less commodious, is a nuisance at common law.   1 Russell on Crimes, 117.   And this statute was not intended to limit or mitigate the common law offence, but was intended rather to define it with more precision.

We have felt it necessary to say thus much in reference to nuisances upon highways, because we apprehend that the case of *Burnham* v. *Hotchkiss*, 14 Conn. R., 311, has sometimes been misapprehended by the profession, and the judge before whom the case under consideration was tried may perhaps have given too much weight to it in allowing the motion for a new trial for a verdict against the evidence.   That was an action of trespass, and the act complained of was the entry upon the plaintiff's land and removing the soil ; the defendants denied the plaintiff's title, and his possession, and claimed that the *locus in quo* was part of the highway which required repair, and that the acts complained of were done for the purpose of repairing the highway under the direction of a highway surveyor.   The judge at the circuit charged the jury, that if the plaintiff was in possession of the premises the defendants were liable for entering thereon, unless there was a public highway there and the defendants by authority of the surveyor entered and did the acts for the purpose of repairing it, or unless the public travel on the highway was by reason of the erection actually obstructed, in either of which cases the defendants were justified.   Now the Supreme Court, in sanctioning this charge, went no further than to

hold that whether a nuisance or not is a question of fact to be determined by the jury in every case. Hence Chief Justice Williams in that case says, that the case had been argued as if the judge had told the jury that the obstruction must be in the traveled path to render it a nuisance ; and goes on to say that, when the judge spoke of the public travel in the highway being obstructed, he did not speak of the traveled path, but of an obstruction on any part of the land devoted to the public for a highway. And the court held that the fair construction of the charge was, that it was not limited to the traveled path in the highway. The case then is an authority for saying that every encroachment upon a highway is not necessarily a nuisance. But it goes no further than this. Hence, says Judge Williams, a tree or a post in the highway is *prima facie* a nuisance, but the question of nuisance in a particular case is for the jury. And he says the question is, Is it an annoyance ? Is the highway less commodious ? The substantial difference in that case between the majority of the court and the dissenting judges, was in respect to the question whether it was for the court or for the jury to determine whether a particular encroachment was a nuisance ; and the court did not mean to lay down any new doctrine as to what is *prima facie* to be deemed a nuisance.

With this view of the law but little need be said on the motion for a new trial for a verdict against the evidence in the case. There was evidence showing pretty clearly that there was there a highway three rods wide, and that the defendant had encroached upon it, by building a fence upon it for a considerable distance, and several witnesses say in substance that the fence was an incumbrance and an annoyance to the highway. And the jury, believing this to be so, notwithstanding some evidence to the contrary, have founded their verdict upon it.

We are satisfied that a new trial ought not to be granted on any ground upon which it is asked for, and so we advise the Superior Court.

In this opinion the other judges concurred.