CHRISTOPHER MONTANARO ET AL. *v.* ASPETUCK
LAND TRUST, INC., ET AL.

CHRISTOPHER MONTANARO ET AL. *v.* TOWN
OF WILTON
(AC 32736)

Gruendel, Lavine and Bear, Js.

Argued February 9—officially released July 24, 2012

*John B. Farley*, with whom were *Lawrence P. Weisman* and, on the brief, *Eric D. Bernheim* and *Coleman C. Duncan*, for the appellant (named defendant).

*Patricia C. Sullivan*, with whom, on the brief, were *G. Kenneth Bernhard* and *Barbara M. Schellenberg*, for the appellant (defendant town of Wilton).

*Robert A. Fuller*, for the appellees (named plaintiff et al.).

*Matthew C. Mason*, for the appellees (intervenor plaintiff Thomas T. Adams et al.).

*Opinion*

GRUENDEL, J. The defendants, Aspetuck Land Trust, Inc. (Aspetuck), and the town of Wilton, appeal from the judgments of the trial court in favor of the plaintiffs, Laurie Ann Deilus and Christopher Montanaro, and the intervening plaintiffs, Thomas T. Adams, William L. Sachs and David F. Clune, the trustees of the Elizabeth Raymond Ambler Trust (Ambler trustees). The defendants claim that the court improperly (1) found that Old 2 Rod Highway properly was accepted as a public highway and was not abandoned subsequently, (2) determined the location of the alleged highway in violation of General Statutes § 13a-39 and (3) granted both an easement by necessity and a prescriptive easement to the plaintiffs. We affirm the court's judgment that Old 2 Rod Highway properly was accepted and not abandoned and its determination that § 13a-39 does not apply to this case, but reverse the judgment with respect to the granting of an easement by necessity to the plaintiffs.

The court found the following facts. In the eighteenth century, towns in Connecticut often entrusted the ownership, control and distribution of properties located in their towns to groups of citizens called proprietors.

In 1730, the proprietors of the town of Norwalk laid out several highways, one of which was Old 2 Rod Highway[1] (highway). It is described in the proprietors' deed as being on the westerly side of the dividing line between the towns now known as Weston and Wilton.

In the same deed, the proprietors conveyed parcels of land abutting the highway to the predecessors in title to the land now owned by Deilus and the Ambler trustees. The property owned by Deilus lies in Wilton and consists of 9.838 acres bounded on the easterly side by the highway (Deilus property). Montanaro is the contract purchaser of that parcel of land. The Ambler trustees own a six and one-half acre parcel north of the Deilus property that also abuts the highway. Aspetuck owns three adjoining parcels to the south of the Deilus property that likewise abut the highway.

Although originally part of Norwalk, in 1802, with the approval of the legislature, Wilton became a town separate from Norwalk. Subsequently, the proprietors of Norwalk conveyed all remaining land owned by them in Norwalk to the town of Norwalk, including the fee title to the highway.[2]

Prior to this litigation, Aspetuck blocked access to the highway with a chain. In 2006, the plaintiffs commenced two separate actions. They filed a five count amended complaint dated October 7, 2008, against Aspetuck and the town of Wilton (first action). In count one, the plaintiffs sought a permanent injunction enjoining Aspetuck from blocking and interfering with their right-of-way over the highway. In count two, the plaintiffs sought a declaratory judgment that the highway was a public highway and further claimed that they were

---

[1] Two rods measure thirty-three feet in width.

[2] Though the conveyance of the property to Norwalk occurred subsequent to the establishment of the town of Wilton, the court viewed the deed as intending to convey the fee of the highway to Wilton.

entitled to a zoning permit for residential construction on the property.[3] In count three, the plaintiffs claimed that they had an easement by implication over both the highway and a wood road on Aspetuck's property that leads to the highway. In count four, the plaintiffs claimed that they had an easement by necessity over the highway and the wood road. In count five, the plaintiffs claimed that they had a prescriptive easement over the wood road. The Ambler trustees thereafter filed a five count intervenor complaint, in which they alleged essentially the same claims asserted by the plaintiffs in their amended complaint, but they subsequently withdrew the count claiming a prescriptive easement.

On October 6, 2006, the plaintiffs brought a second action against Wilton in which they sought a declaratory judgment against Wilton that the highway was a public highway (second action). On November 22, 2006, the court granted Aspetuck's motion to intervene in the second action. The first and second actions were consolidated for trial on October 15, 2007. On March 25, 2008, the court granted the Ambler trustees' motion to intervene in the second action. On December 1, 2008, the court granted the Ambler trustees' motion to intervene in the first action.

In its answers to the amended complaint and the intervenor complaint, Aspetuck asserted three special defenses: (1) that the designation and location of the highway on maps is erroneous, (2) that any rights that the plaintiffs might have to a right-of-way across its land were extinguished by reason of nonuse and (3) that such rights also were extinguished by the Marketable Title Act, General Statutes § 47-33b et seq.

---

[3] The zoning permit claim was included in the original two count complaint and dismissed by the trial court on the ground that the court lacked jurisdiction over such a claim. This court affirmed that judgment in *Montanaro* v. *Aspetuck Land Trust, Inc.*, 103 Conn. App. 237, 241–42, 928 A.2d 581 (2007).

In October, 2009, the defendants moved to dismiss the plaintiffs' and the Ambler trustees' complaints for lack of subject matter jurisdiction on the ground that General Statutes § 13a-39[4] vests primary jurisdiction for determining the location of a disputed highway in the town selectmen, not the Superior Court. Before the presentation of evidence at trial, the court heard oral argument on the defendants' motion to dismiss and denied the motion.

The consolidated actions were tried to the court in October and December, 2009. On August 6, 2010, the court issued its memorandum of decision. The court determined that the highway was a public road and that it was located in and owned by Wilton. It further determined that the plaintiffs and the Ambler trustees have an easement by convenience and necessity over the highway to Wampum Hill Road. Additionally, the

---

[4] General Statutes § 13a-39 provides: "Whenever the boundaries of any highway have been lost or become uncertain, the selectmen of any town in which such highway is located, upon the written application of any of the proprietors of land adjoining such highway, may cause to be made a map of such highway, showing the fences and bounds as actually existing, and the bounds as claimed by adjoining proprietors, and shall also cause to be placed on such map such lines as in their judgment coincide with the lines of the highway as originally laid down. Such selectmen shall cause a notice to be printed for at least two days in a daily paper having a general circulation in the town in which such highway is located, and shall send a written or printed notice to each known adjoining proprietor on such highway, setting forth the name or location of the highway, a description of the portions to be reestablished, the place and time where such map may be seen, and the time, not less than two weeks from the date of the issue of such notice, when and place where all parties interested may be heard under oath in regard to such reestablishment. Such selectmen may adjourn such hearing from time to time and, upon reaching a decision, shall cause the same to be published as aforesaid and a notice of the same to be sent to all known adjoining proprietors. Such decision shall specifically define the line of such highway and the bounds thereof and shall be recorded in the records of the town in which such highway is located, and the lines and bounds so defined and established shall be the bounds of such highway unless changed by the Superior Court upon appeal from such decision of the selectmen."

court ruled that the plaintiffs have a prescriptive easement over the wood road located on Aspetuck's property.[5] The court granted a permanent injunction against Aspetuck, enjoining it from interfering with the plaintiffs' and the Ambler trustees' "access to and over the . . . highway or in any way preventing them from using the highway for all lawful purposes." The court denied the defendants' motion for reconsideration. This appeal followed.

On October 26, 2010, the defendants moved for an articulation of the court's memorandum of decision. The defendants requested that the court (1) rule on their claim that the court lacked jurisdiction to determine the location of the highway under § 13a-39, (2) articulate the legal standard and principles relied upon by the court to determine whether the highway had been

[5] Notably, the court did not rule on count three of the amended complaint or the intervenor complaint, both of which sought an easement by implication. Practice Book § 61-3 provides in relevant part that "[a] judgment disposing of only part of a complaint, counterclaim, or cross complaint is a final judgment if that judgment disposes of all causes of action in that complaint, counterclaim, or cross complaint brought by or against a particular party or parties." Though the court did not dispose of all counts against Aspetuck, we nevertheless conclude that the judgment was final. In *Mount Vernon Fire Ins. Co.* v. *Morris*, 90 Conn. App. 525, 533, 877 A.2d 910 (2005), appeal dismissed, 281 Conn. 544, 917 A.2d 538 (2007) (certification improvidently granted), although the trial court had not disposed of two counts of the complaint, this court determined that the judgment appealed from was an appealable final judgment under the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In *Curcio*, our Supreme Court held that "[a]n otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id. Applying that precedent, this court in *Mount Vernon Fire Ins. Co.* v. *Morris*, supra, 533, determined that the judgment was final under *Curcio* because no matter how the court might rule on the undisposed of claims, the end result would remain unchanged. Likewise, if the court in this case granted the easement by implication alleged in count three, or if it decided that count in favor of Aspetuck, the result would remain unchanged because the court already had granted easements. Under *Mount Vernon Fire Ins. Co.*, the court's judgment satisfies the second prong of *Curcio* and thus is an appealable final judgment.

accepted and (3) make a finding as to whether the plaintiffs and the Ambler trustees have alternate access to their properties from Georgetown Road, and, if so, how the access affects the court's conclusions with respect to the acceptance of the highway and the granting of easements. On December 9, 2010, the court issued an articulation. On February 23, 2011, this court granted the defendants' motion for review of the trial court's articulation but denied the relief requested. Additional factual and procedural history will be set forth as necessary.

I

The defendants first claim that the court committed reversible error by holding that the highway properly was accepted as a public highway. We disagree, and conclude that the highway properly was accepted through public use and was not subsequently abandoned.

The questions of whether there have been dedication, acceptance and abandonment generally are recognized as questions of fact. See *Drabik* v. *East Lyme*, 234 Conn. 390, 394, 662 A.2d 118 (1995); *Pizzuto* v. *Newington*, 174 Conn. 282, 285, 386 A.2d 238 (1978). "Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous." (Internal quotation marks omitted.) *Drabik* v. *East Lyme*, supra, 394. To the extent that the defendants' claim regarding the acceptance of the highway challenges the legal basis of the court's conclusions, however, our review is plenary. *Crews* v. *Crews*, 295 Conn. 153, 161–63, 989 A.2d 1060 (2010). The question of acceptance, therefore, is better understood as "one of mixed law and fact. It is one of law in so far as it involves questions as to the nature of this acceptance, the source from which it must come, and the acts and things which may be indicative of it. It is one of fact

in so far as it involves inquiries as to whether or not the requisite acts and things have been done so that legal requirements have been met." *Phillips* v. *Stamford*, 81 Conn. 408, 411, 71 A. 361 (1908).

## A

We begin by reviewing our contemporary laws of highway establishment and their historical counterparts. Highways are established by one of the following four methods: "(1) through the direct action of the legislature; (2) through authorized proceedings involving an application to a court; (3) through authorized proceedings by agents appointed for that purpose, such as selectmen of towns [General Statutes § 13a-61] and specified authorities of cities and boroughs [General Statutes § 13a-7]; (4) through private dedication of land for that purpose and its acceptance by the public." *Makepeace* v. *Waterbury*, 74 Conn. 360, 361, 50 A. 876 (1902); see also R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 49:2, pp. 95–96. Only the latter two methods are relevant to this appeal.

Accordingly, we first review the genealogy of the third method of establishing highways. "[I]n 1698 . . . the [g]eneral [c]ourt for the first time gave any special direction to towns in respect to laying out highways. It then directed that the selectmen in each town should take care that convenient highways 'for the advantage of posts and other travelers in their journeying' through the colony 'be laid out through their several townships;' and the next year the [g]eneral [c]ourt passed an [a]ct regulating the layout of highways; directing the [c]ounty [c]ourt to lay out new highways 'from town to town,' and the selectmen to lay out 'particular and private ways' for such town only; ('particular way' meaning a public highway not laid out from town to town)." *Canastota Knife Co.* v. *Newington Tramway Co.*, 69

Conn. 146, 165, 36 A. 1107 (1897) (*Hamersley, J.*, concurring).

In 1773, legislation was enacted providing that the town selectmen may lay out such public highways or private highways as deemed necessary. This statute was the first to require that the acts of the selectmen in laying out highways be approved by the town in order to be valid.[6] *Brownell* v. *Palmer*, 22 Conn. 107, 117 (1852). It required the selectmen to give notice to the owners of the land through which the highway was to be laid out and to pay damages to any such owner. The act further required "a survey in writing . . . containing a particular description of such ways being made, accepted by the town and recorded in the records of lands in such town," and upon satisfaction of these conditions "such ways shall be and remain for the use for which they were laid out." General Statutes (1808 Rev.) tit. LXXXVI, c. 1, § 13. The equivalent statutory grant of authority is now found in General Statutes § 13a-61, which retains language similar to the 1773 act.[7]

The fourth method of creating highways is the common-law doctrine known as dedication and acceptance.

---

[6] Before 1773, "the selectmen were authorized to lay out highways, and the ancient statutes, empowering them to do so, did not require their proceedings to be reported to the town, or to be recorded. Statute, ed. 1750, p. 381. Ed. 1715, pp. 50, 51." *Brownell* v. *Palmer*, 22 Conn. 107, 118 (1852).

[7] General Statutes § 13a-61 provides: "The selectmen of each town may lay out necessary highways therein, not being within a city or within a borough having, by virtue of its charter or by statute, control of and liability for the highways within its limits, first giving reasonable notice in writing to the owners of the land through which the same are to be laid out or leaving copies of such notices at their places of abode, if in this state, to be present at the laying out of any such highway; and the damage done to such owners by such laying out shall be paid by the town. A written survey, signed by the selectmen, particularly describing such highway, with a description of each piece or parcel of land taken from or annexed to the lands of adjoining proprietors, being accepted by the town and recorded in its land records, and satisfaction being made to the persons injured, or the money deposited in the town treasury for their use, according to the agreement or estimate made as hereinafter provided, such highway shall be and remain for the use for which it was laid out."

"From early times, under the common law, highways have been established in this state by dedication and acceptance by the public. . . . Dedication is an appropriation of land to some public use, made by the owner of the fee, and accepted for such use by and in behalf of the public. . . . Both the owner's intention to dedicate the way to public use and acceptance by the public must exist, but the intention to dedicate the way to public use may be implied from the acts and conduct of the owner, and public acceptance may be shown by proof of the actual use of the way by the public. . . . Thus, two elements are essential to a valid dedication: (1) a manifested intent by the owner to dedicate the land involved for the use of the public; and (2) an acceptance by the proper authorities or by the general public." (Citation omitted; internal quotation marks omitted.) *Drabik* v. *East Lyme,* supra, 234 Conn. 394. Since 1927, General Statutes § 13a-48[8] has regulated the acceptance of highways by municipalities, or the proper authorities. Public Acts 1927, c. 248.

B

Having reviewed the general methods of establishing highways, we turn to the laying out of highways by town proprietors generally. The plaintiffs contend that the proprietors' highway in question was established pursuant to the third method, "namely the Norwalk proprietors as authorized agents of the municipality, who owned the land where the [highway] was located

---

[8] General Statutes § 13a-48 provides: "Any municipality whose duty it is to maintain the highways within its limits may, at any annual or special meeting held for that purpose, accept as a public highway any proposed highway situated in such municipality, provided any municipality in which a town meeting is the legislative body may by ordinance or resolution delegate the power to accept public highways to the board of selectmen in accordance with such procedures as the municipality may establish in the ordinance or resolution, and any municipality may, by charter, provide an alternative means for the acceptance of public highways."

laid it out and dedicated it to public use."[9] The court, however, analyzed the case under the common-law theory of dedication and acceptance. Our review of the pertinent law persuades us that, in 1730, proprietors' highways were established pursuant to the common-law theory of dedication and acceptance.

"The history of the state . . . shows that in the early settlement of it, when the lands were usually granted to companies of individuals called the proprietors of lands, there being usually one such company in each town, these proprietors, acting as if they were corporate bodies, from time to time surveyed and set out to individual proprietors in severalty portions of the land thus held in common, and in connection with these allotments in severalty public ways were always surveyed, and the lands thus surveyed were reserved for public use as highways."[10] *State* v. *Merrit*, 35 Conn. 314, 315–16 (1868). It also was observed that "[w]hen new townships have been taken up . . . it has been the general, if not the universal practice, to reserve lands for highways. The reserving or making of highways has been

---

[9] The plaintiffs also argue that, under the fourth method, the Norwalk proprietors were the proper authorities to accept a highway. See part I C of this opinion.

[10] We find further discussion of the custom of proprietors in the preamble to "An act for the better establishing and confirmation of the titles of land anciently obtained in townships, according to the manner or custom heretofore used; and for preventing contentions about the same," enacted in May, 1723. See General Statutes (1808 Rev.) tit. XCVII, c. X. The preamble states in relevant part that "it was anciently customary for towns to be settled, and the lands in them contained, to be disposed of by division, or otherwise, to particular persons, or special uses by the inhabitants of the said towns in town-meeting assembled; after which custom or manner, particular persons obtained to themselves certain quantities of said land, which they held and disposed of as their own proper estate of inheritance; and other quantities, or parcels of the said land in such towns which remained common, without being divided or disposed of to any person or use whatsoever, were still considered and allowed to be in the disposition of the said inhabitants assembled in such town-meetings, by the major vote of those present. . . ." General Statutes (1808 Rev.) tit. XCVII, c. X, preamble.

coeval with the division of lands among the proprietors." *Peck* v. *Smith,* 1 Conn. 103, 111 (1814) (*Ingersoll, J.,* dissenting).

The act of laying out a highway by the proprietors of a town is generally described as a dedication. See *State* v. *Merrit,* supra, 35 Conn. 316 ("[t]his reservation of them as highways by the proprietors of the lands would seem to be as formal an act of dedication as could well be made"); *Noyes* v. *Ward,* 19 Conn. 250, 255, 269 (1848) (affirming trial court's charge to jury "that it was not necessary in order to constitute such a [public] highway, that there should be a legal or formal laying-out thereof on record; that it was competent for the proprietors of land, to dedicate it to the public, for their use as a highway"); *Peck* v. *Smith,* supra, 1 Conn. 109 ("[v]ery many of our highways were dedicated to the public by the original proprietors more than a century ago"); *Stiles* v. *Curtis,* 4 Day (Conn.) 328, 329–30 (1810) ("[i]t appears, however, in evidence, that the demanded premises are part of an open, public highway, long used and occupied as such; that it was dedicated to that use by the original proprietors of the ancient town of Woodbury, 'by laying out the common land on both sides, and selling the same as bounded on highway' "). Indeed, we read *Merrit* to reject the notion that proprietors could lay out a highway in any fashion other than by dedication and acceptance. In that case, the defendant was convicted of erecting a fence on a public highway, and to prove the existence of the public highway, the state offered as evidence a survey and laying out of a highway by a committee of proprietors made in 1752 and recorded on the proprietors' book in 1753. *State* v. *Merrit,* supra, 315. The defendant objected to the survey on the ground that neither towns nor the proprietors of lands had any authority in 1752 to lay out highways, and *Fowler* v. *Savage,* 3 Conn. 90 (1819), was cited in support of that proposition. *State* v. *Merrit,*

supra, 315. The court deemed that the survey was "doubtless inadmissible" as evidence of a legal laying out of the highway, but it determined that "the proprietors of lands could always dedicate them, or any portion of them, to the public use as highways, and if the public accepted of such dedication the lands thus dedicated became legal highways." Id.

The plaintiffs have not provided, nor has our research revealed, any authority that demonstrates that highways laid out by proprietors in 1730 could be established by any method other than the common-law doctrine of dedication and acceptance. On the basis of the foregoing, we conclude that the only method by which the highway could have been established was pursuant to the common-law theory of dedication and acceptance.

C

We next address the court's finding that the highway validly was accepted by the proper authorities. The defendants contend that under the doctrine of dedication and acceptance, actual use by the general public, as compared with acceptance by the proper authorities, was the only method of accepting a dedicated highway in 1730 because, prior to the enactment of § 13a-48 in 1927, the "proper authorities" of a municipality did not have the power to accept a highway. We agree with the defendants, and disagree with the court's conclusion that the proprietors were the proper authorities to accept the highway.

The court determined that the 1730 deed made it clear that it was the proprietors' intention to dedicate the highway to public use.[11] It found that by creating and placing the 1730 deed on the record, the proprietors

---

[11] The defendants do not challenge the court's finding that there was a valid dedication of the highway.

also accepted the highway, for they were responsible for controlling and distributing all of the land in Norwalk. In its articulation, the court clarified that, in reaching that conclusion, it credited the testimony of the plaintiffs' expert, Mary Ann Rossi. Rossi testified that the proprietors of Norwalk owned all of the land and were the entity responsible for distributing the land. On the basis of her testimony,[12] the court concluded that the proprietors were the proper authority to accept the highway and that the proprietors accepted the highway in the 1730 deed.

Today, a public highway can be accepted by the public or by the proper authorities pursuant to § 13a-48, which was enacted in 1927. That statute "gave specific authority to a municipality at any annual or special meeting held for that purpose to accept as a public highway any street or highway situated in the municipality." *Thompson* v. *Portland*, 159 Conn. 107, 113, 266 A.2d 893 (1970).

Prior to a statutory grant of authority to municipalities to accept highways, it was said that "acceptance must be by the 'unorganized public,' and not by formal action of a municipality. Neither town nor city has power to establish a highway by corporate vote, accepting land given for that purpose, when the legislature has not given it specific authority." *Makepeace* v. *Waterbury*, supra, 74 Conn. 362; see also *Watrous* v. *Southworth*, 5 Conn. 304, 308–309 (1824); *Fowler* v. *Savage*, supra, 3 Conn. 96. Before the 1927 enactment

---

[12] The defendants claim that the trial court impermissibly allowed Rossi to "establish the law of the case." They argue that because no witness, expert or otherwise, can testify to a legal opinion, it was error for the court to allow Rossi's testimony that the proprietor roads could be accepted by the proprietors themselves. The defendants did not object to the portion of Rossi's testimony addressing how proprietors laid out highways and divided land, which was included in the court's articulation as the testimony specifically credited. The defendants have therefore failed to preserve their evidentiary claim for appellate review.

of § 13a-48, the matter of dedication and acceptance was "left . . . to rest on the principles of the common law with which it originated. These principles authorize the gift, estop the giver from recalling it, and presume an acceptance by the public where it is shown to be of common convenience and necessity, and therefore *beneficial* to them." (Emphasis in original.) *Guthrie* v. *New Haven*, 31 Conn. 308, 321 (1863).

On the basis of the foregoing, we conclude that the proprietors could not have been the proper authorities to accept the highway because they were not vested with such authority by statute. We agree with the defendants that, in 1730, acceptance of a dedicated highway could only be accomplished under the common law through actual use by the general public.

With that in mind, we next address the significance of the 1802 deed as it relates to the acceptance of the highway. The plaintiffs contend that the 1802 transfer by the Norwalk proprietors of all of their remaining land, including the highway, constituted or confirmed the prior acceptance of the highway. We disagree.

The issue of who holds the title to the highway is a distinct question from whether the highway is accepted as a public highway. "The town can own the roadbed without it being a public highway. On the other hand there can still be a public highway without public ownership of a fee simple interest in the highway strip." 9B R. Fuller, supra, § 49:2, p. 99. As we have concluded in part I B of this opinion, public use was the only method to accept a highway in 1730. The acceptance of a deed by a town, standing alone, was not public acceptance of a highway.[13] See *New York, N.H. & H. R. Co.* v. *New*

---

[13] The defendants contend that the 1802 deed could not constitute acceptance for two additional reasons. They contend that, even if ownership of the highway could constitute acceptance, the 1802 deed could not constitute acceptance because it was a nullity, as the proprietors divested themselves of title to the highway by laying it out and conveying abutting parcels, and therefore they could not convey title to the highway. See, e.g., *Chatham* v. *New*

*Haven,* 46 Conn. 257, 263 (1878) ("The acceptance by the city therefore of the deed . . . gives it no right to control this land in dispute as a highway or public street. The acceptance of it as such must have been by the public, and not the city of New Haven."). We therefore disagree as a matter of law that the 1802 deed constituted or confirmed acceptance of the highway.

### D

We turn next to the court's finding that the highway was accepted by the public through public use. The defendants claim that the court committed reversible error by finding that the highway was accepted by the public. We disagree.

The principles of acceptance of a highway under the common law "authorize the gift, estop the giver from recalling it, and presume an acceptance by the public where it is shown to be of common convenience and necessity, and therefore *beneficial* to them. For the purpose of showing that it is beneficial, an express acceptance by the town, or other corporation within whose limits it is situate, and who are liable for its repair, the reparation of it by the officers of such corporation, or a tacit acquiescence in the open public use of it, are important; and so are the acts of individuals, such as giving it a name by which it becomes generally known, recognizing it upon maps and in directions, using it as a descriptive boundary in deeds of the adjoining land, or as a reference for locality in advertisements

*Brainerd,* 11 Conn. 59, 82–83 (1835); *Peck* v. *Smith,* supra, 1 Conn. 106. They also argue that, even if the proprietors retained title to the highway after the 1730 dedication, the 1802 deed did not convey title of the highway to Wilton because, as of the time of the deed conveying all of the proprietors' remaining land in Norwalk, Wilton had been formed and the highway was no longer in Norwalk. We need not reach these arguments because we conclude that the 1802 deed could not constitute or confirm acceptance of the highway. Except as it relates to the significance of the 1802 deed, the defendants do not otherwise challenge the court's finding that Wilton holds title to the highway.

of property . . . and any other acts which recognize its usefulness and tend to show an approval of the gifts by the members of the community immediately cognizant of it; but the principal evidence of its beneficial character will be the actual use of it as a highway, without objection, by those who have occasion to use it for that purpose." (Emphasis in original.) *Guthrie* v. *New Haven*, supra, 31 Conn. 321.

To determine whether the public has accepted a highway through actual use, the "use need not necessarily be constant or by large numbers of the public" but it "must continue over a significant period of time . . . and be of such a character as to justify a conclusion that the way is of common convenience and necessity." (Citation omitted; internal quotation marks omitted.) *Meshberg* v. *Bridgeport City Trust Co.*, 180 Conn. 274, 282, 429 A.2d 865 (1980). "While the public's actual use of the property dedicated to a municipality can, under appropriate circumstances, constitute an implied acceptance on the part of the public, there are municipal actions that may also constitute acceptance of such property. . . . Where a municipality grades and paves a street, maintains and improves it, removes snow from it, or installs storm or sanitary sewers, lighting, curbs, or sidewalks upon it there exists a factual basis for finding an implied acceptance of the street by the municipality. . . . Such municipal acts are factors to be weighed in the ultimate factual determination of acceptance. Another factor is the municipality's levy and collection of general and special taxes and assessments on the property." (Citations omitted.) Id., 282–83.

Our precedent dictates that although exemption from taxation, recognition on maps and descriptions in deeds may be probative of public acceptance, the "principal evidence . . . will be the actual use of it as a highway, without objection, by those who have occasion to use it for that purpose." *Guthrie* v. *New Haven*, supra, 31

Conn. 321; see also *Meshberg* v. *Bridgeport City Trust Co.*, supra, 180 Conn. 284. The court made one factual finding regarding actual use of the highway. It found that a predecessor in interest to the Deilus parcel granted an easement to a neighbor in 1795, providing the neighbor a right to pass through the Deilus parcel around a rock outcropping on the highway. The court concluded that this indicated a public use of the highway at that time. There was expert testimony presented that supports the court's inference that the easement indicated a public use of the highway. Rossi and Richard Gibbons both testified that the easement indicated that the highway was being used, because if it were not being used, an easement would not have been necessary to pass around it.

In addition to that particular factual finding regarding the easement and the court's conclusion that the easement indicated a public use, the court found additional evidence of public acceptance. The court first found that the 1802 deed conveyed the fee of the highway to Wilton and that no one has ever claimed title to the thirty-three foot width of the highway. The court also found that, since the 1800s, numerous maps and deeds have been recorded showing the highway as the easterly boundary, and Wilton had itself acquired property described as being bounded by the highway. It found that lots on the westerly side of the highway have public use of the highway and demonstrated such by several conveyances of the lots in the 1700s that referred to the easterly boundaries of the properties as the highway. In addition, the court noted that taxes never have been levied on the highway.

While the principal evidence of public acceptance is actual use, recognizing the highway in maps and using it as a descriptive boundary in deeds of the adjoining land are relevant considerations. *Guthrie* v. *New Haven*, supra, 31 Conn. 321. The court made multiple

factual findings that demonstrate that the highway frequently is recognized on maps and used as a descriptive boundary. Moreover, the court made a finding that Wilton does not assess taxes on the highway. These findings, taken together with the factual finding indicating actual use, support a conclusion that the public accepted the highway. We emphasize that the facts of this case predate the founding of this country by nearly one-half century. To conclude that the court should have made additional factual findings as to actual use would be an unreasonable demand in light of the passage of almost three hundred years since the dedication of the highway. Under these unique circumstances, the factual findings made by the court are sufficient to support a conclusion that the highway was accepted by the public as a matter of law.

E

The defendants claim that, even if the court correctly found that the highway had been accepted, it improperly determined that the highway had not been abandoned due to nonuse. We disagree.

Once a highway is shown to be a public highway, it remains so unless the highway is either abandoned or discontinued pursuant to General Statutes § 13a-49.[14] "A highway may be extinguished [1] by direct action through governmental agencies, in which case it is said to be discontinued; or [2] by nonuser by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned. The length of time during which such nonuser must continue on the part of the public, before the highway can be presumed to be abandoned, has not been determined in this [s]tate by statute or judicial decision. It must be a long time." *Greist* v. *Amrhyn*, 80 Conn. 280, 285, 68 A. 521 (1907).

---

[14] The parties stipulated that the highway was not discontinued pursuant to § 13a-49.

"Such an abandonment implies, of course, a voluntary and intentional renunciation, but the intent may be inferred as a fact from the surrounding circumstances . . . ." *Newkirk* v. *Sherwood*, 89 Conn. 598, 605, 94 A. 982 (1915). "Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon . . . but nonuser, as of an easement, or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances." (Internal quotation marks omitted.) *Carothers* v. *Capozziello*, 215 Conn. 82, 130, 574 A.2d 1268 (1990) (discussing abandonment of easement).

"The burden of proof is on him who seeks to establish the abandonment of a highway, and the continuance of the street will be presumed until satisfactory evidence is produced to rebut it." *Appeal of St. John's Church*, 83 Conn. 101, 105, 75 A. 88 (1910).

We reiterate that abandonment is a question of fact. *Pizzuto* v. *Newington*, supra, 174 Conn. 285. On the basis of the record presented, the court reasonably could have found that there was no abandonment of the highway. In *Greist* v. *Amryhn*, supra, 80 Conn. 285, our Supreme Court held that abandonment requires nonuse by the public over a long period of time together with an intent to abandon the road as a public highway. While nonuse of the highway may, in some circumstances, conclusively establish the intent to abandon; see *Newkirk* v. *Sherwood*, supra, 89 Conn. 605; where abandonment is found there most frequently is some affirmative act of an intention to abandon. *Carothers* v. *Capozziello*, supra, 215 Conn. 130. The court here found that the "many conveyances of properties abutting the road and the plethora of maps depicting the

highway for more than the last 200 years belies the fact that there has been an intentional abandonment of the highway." Whatever inference of intent to abandon that may be created by the nonuse of the highway thus was weakened by the continued reliance on the highway as a boundary and the depiction of it in maps and the lack of evidence presented by the defendants to demonstrate an intent to abandon other than nonuse. In light of that evidence, we conclude that the defendants did not meet their burden to prove that the court's factual finding that the highway was not abandoned is clearly erroneous.

## II

The defendants next claim that the court lacked subject matter jurisdiction to determine the location of the highway because § 13a-39 vests primary jurisdiction in the town selectmen to make that determination. We disagree and conclude that the court properly determined that § 13a-39 does not apply to the facts of the present case.

In October, 2009, the defendants moved to dismiss the plaintiffs' and the Ambler trustees' complaints for lack of subject matter jurisdiction. The defendants argued that the plaintiffs and the Ambler trustees failed to exhaust their administrative remedies in requesting that the court determine the boundaries and legal status of the highway without first petitioning the board of selectmen pursuant to § 13a-39. The court denied the motion, stating: "The purpose of this case is to determine the public or private nature of [the highway], and the board of selectmen has power to do that. There are other issues too; easements of one kind or another. These issues are to be decided by the court. Thereafter, any issues of whether the board of selectmen play a role in any of this, the court will decide." In its memorandum of decision, the court concluded that the highway is located in, and is owned in fee by, Wilton. It also

concluded that the highway is thirty-three feet wide and runs from Wampum Hill Road in Wilton, north to its northerly termination, as depicted in the Gault map. In their motion for articulation, the defendants requested that the court rule on the question of its authority to determine the location of the highway in light of § 13a-39. The defendants argued in their motion that a determination of the location of the highway was essential before the court could reach any conclusion as to whether it constitutes a public highway. In its articulation, the court concluded that § 13a-39 was not applicable to the case, relying on *Hamaan* v. *Newtown*, 14 Conn. App. 521, 524, 541 A.2d 899 (1988). We agree with the court.

"[I]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 131 Conn. App. 24, 28, 28 A.3d 994, cert. granted on other grounds, 303 Conn. 903, 31 A.3d 1178 (2011).

We agree with the court's reading of *Hamaan* and its conclusion that § 13a-39 did not require the plaintiffs to exhaust their administrative remedies before seeking a determination of the legal status of the highway. Section 13a-39 provides in relevant part: "Whenever the boundaries of any highway have become lost or become uncertain, the selectmen of any town in which such highway is located, upon the written application of any of the proprietors of land adjoining such highway, may cause to be made a map of such highway, showing the fences and bounds as actually existing . . . ."

In *Hamaan*, this court concluded that § 13a-39 does not empower boards of selectmen to establish the legal

status of roads as public or private. "[Section] 13a-39 sets forth a procedure for defining the boundaries of a highway which have become lost or uncertain. . . . A statutory proceeding for the survey and platting of an existing road does not operate to establish the road. Its purpose is merely to ascertain the courses and distances of one claimed already to be established. It estops the public from claiming that the road runs on a line different from that of the survey. . . . *Recourse to § 13a-39 presupposes a prior determination that the road in question has been deemed a public highway.* . . . The board is without authority under that section to determine the legal status of a road. The determination of the legal status of a road is distinct from a determination of the boundaries of a road." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hamaan* v. *Newtown,* supra, 14 Conn. App. 524; see also *Marchesi* v. *Board of Selectmen,* supra, 131 Conn. App. 31–32.

The second counts of the amended complaint and the intervenor complaint sought a determination of the legal status of the road. Because recourse to § 13a-39 is only available where the road in question already has been established as a public highway, we agree with the court that the statute does not apply to this case.

III

Having concluded that the highway properly was accepted as a public highway, we turn to the related, but distinct, matter of the easements granted by the court to the plaintiffs and the Ambler trustees. Because the highway is a public highway, the public, including the plaintiffs and the Ambler trustees, has an easement for travel over the road; *Benham* v. *Potter,* 52 Conn. 248, 252 (1884); *Peck* v. *Smith,* supra, 1 Conn. 132 (*Swift, J.,* concurring); and neither the plaintiffs nor the Ambler trustees would require any additional easements.

Indeed, the court concluded that, as abutting owners, the plaintiffs and the Ambler trustees have a right of continuous access over the highway. Additionally, the court concluded that Wilton holds the title to the highway. Because the trial court concluded that the highway properly was accepted as a public highway and that the highway was owned by Wilton, we infer that the court considered the additional easements in the alternative.[15]

The plaintiffs and the Ambler trustees claimed various easements,[16] including a wood road through the Bailie and Gault parcels and the area shown as the highway on maps of the Gault and Beaumont parcels.[17]

[15] The Ambler trustees filed a statement of alternate grounds to affirm the judgment pursuant to Practice Book § 63-4 (a) (1) (A). They presented as an alternate ground on which the judgment of the trial court may be affirmed that Wilton has title to the highway and the Ambler trustees have an easement by convenience and necessity to Wampum Hill Road in Wilton.

[16] To provide context, we note the following. Aspetuck owns three parcels of undeveloped land. It acquired the first from Andre Beaumont in 1968 (Beaumont parcel). It obtained the second and third parcels from Howard Fromson and David Strassler in 2003. The second and third parcels are known as the Gault parcel and the Bailie parcel, respectively, named for the predecessors in title to Fromson and Strassler. The Bailie parcel abuts the Deilus property, the Gault parcel abuts the Bailie parcel and the Beaumont parcel abuts the Gault parcel.

The maps show an accessway, called the "Old Highway" in the Beaumont map, which travels over the Beaumont parcel and leads to Wampum Hill Road. The "Old Highway" diverges into two wood roads near the property line between the Beaumont and Gault parcels. One wood road continues into the Gault and Bailie parcels. The other continues in the opposite direction, and is shown on the Gault map as ultimately leading to Georgetown Road.

Old 2 Rod Highway abuts the easterly boundary of the Deilus property as well as the Bailie, Gault, and Beaumont parcels.

[17] Paragraph 20 of counts three and four of the amended complaint states: "The defendant Aspetuck may also have acquired a fee interest in the Old Two Rod Highway as a result of a deed from Howard Fromson and David Strassler . . . which would be subject to any existing public or private easements of access." The complaint claims easements over Aspetuck's land, including the highway. The court determined that Wilton acquired fee title to the alleged highway by virtue of an 1802 deed from the Norwalk proprietors.

They claimed easements by implication and by necessity in counts three and four of the amended complaint and the intervenor complaint over the wood road and the highway. In count five of the amended complaint, the plaintiffs also claimed a prescriptive easement over the wood road.

The court determined that "when the proprietors laid out the highway in 1730 it was done to serve the convenience and necessity of the otherwise landlocked properties conveyed to the abutting owners." The court found that Fred Deilus acquired the Deilus property in 1946, and during the period of his ownership and that of his successors in interest, the wood road was used to access his parcel. The court therefore found that the plaintiffs and the Ambler trustees had an easement by "convenience and necessity" over the highway and that the plaintiffs had a prescriptive easement over the wood road across Aspetuck's property.

In their motion for articulation, the defendants requested a finding on their claim of alternate access. The defendants maintained that the plaintiffs and the Ambler trustees had "access to their property from Georgetown Road, along the existing wood road that intersects with the unimproved portion of Wampum Hill Road," and that the issue related to whether the plaintiffs and the Ambler trustees had satisfied their burden of proof as to their easement by necessity.[18] The

[18] In their brief, the Ambler trustees claim that the defendants have confused the wood road that goes over Aspetuck's property and to the Deilus property with a separate and distinct wood road that runs off Wampum Hill Road to Weston and Georgetown and over which neither the plaintiffs nor the Ambler trustees have any easement rights. We agree. The court's articulation made clear that it believed the wood road referred to in the defendants' request for articulation referred to the wood road that continued in the opposite direction from the wood road through the Gault and Bailie parcels, and there was no evidence presented to support a finding that the plaintiffs have alternative access to their properties over the wood road that leads to Georgetown Road. See footnote 15 of this opinion.

defendants requested that the court make a finding as to their claim of alternate access and, if so, explain how that affects the court's conclusions with respect to both the acceptance of the highway and the plaintiffs' claims of easements by necessity and implication over the defendants' property. In its articulation, the court clarified that the plaintiffs and the Ambler trustees had no alternate access from their properties to Georgetown Road over a wood road. The court credited testimony from Rossi that there is no deed or easement indicating that either the owners of the Deilus property or the Ambler property have a right to go over the wood road into Weston.

The defendants contend that it was inconsistent to grant Deilus a prescriptive easement over the wood road and also to grant Deilus an easement by convenience and necessity over the highway.[19] They do not challenge the court's granting of a prescriptive easement, but claim solely that, given the prescriptive easement, there was no necessity to justify the granting of an easement by necessity over the highway. We conclude that the easement by necessity was granted in error.

The defendants' claim raises an issue of law over which our review is plenary. See *Kelley* v. *Tomas*, 66 Conn. App. 146, 158, 783 A.2d 1226 (2001). "The requirements for an easement by necessity are rooted in our common law. . . . [A]n easement by necessity will be imposed where a conveyance by the grantor leaves the grantee with a parcel inaccessible save over the lands of the grantor, or where the grantor retains an adjoining parcel which he can reach only through the lands conveyed to the grantee. . . . [T]o fulfill the element of

---

[19] The court also granted the Ambler trustees an easement by necessity. The defendants conceded at oral argument that the easement to the Ambler trustees was appropriate, and they do not challenge it.

necessity, the law may be satisfied with less than the absolute need of the party claiming the right of way. The necessity element need only be a reasonable one. . . . Although the requirements for an easement by necessity once included a showing of unity of ownership . . . our Supreme Court has eliminated that requirement. . . . Moreover, although it is true that [a]n easement of necessity may occur when a parcel has become landlocked from outside access such that the owner would have no reasonable means of ingress or egress except over lands promised by another and a right-of-way is necessary for the enjoyment of the parcel . . . [t]he inverse also is true; that is, a common-law right-of-way based on necessity expires when the owner of a dominant estate acquires access to a public or private road through another means." (Citations omitted; internal quotation marks omitted.) *Christensen* v. *Reed*, 105 Conn. App. 578, 583–84, 941 A.2d 333, cert. denied, 286 Conn. 912, 944 A.2d 982 (2008).

In their complaint, the plaintiffs alleged that without an easement by necessity over the highway, they would have no reasonable means of access to their property. However, the plaintiffs have a prescriptive easement over the wood road through Aspetuck's property that provides a reasonable means of access. "[T]o fulfill the element of necessity, the law may be satisfied with less than the absolute need of the party claiming the right of way. The necessity need only be a reasonable one." *Hollywyle Assn., Inc.* v. *Hollister*, 164 Conn. 389, 399, 324 A.2d 247 (1973). That standard of reasonable necessity is not satisfied where the property is not landlocked, as the plaintiffs have access to their property over the wood road. See *Kelley* v. *Tomas*, supra, 66 Conn. App. 169 n.5 (plaintiff's challenge to grant of easement by necessity unavailing where court properly granted prescriptive easement).

The judgment is reversed only as to the granting of an easement by necessity to the plaintiffs; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.