## RICHARD HORRIGAN ET AL. *v.* TOWN OF WASHINGTON
## (AC 32364)

DiPentima, C. J., and Lavine and Foti, Js.

Argued October 22, 2012—officially released July 30, 2013

*David S. Golub*, with whom were *Jonathan M. Levine* and *Marilyn J. Ramos*, for the appellants (substitute plaintiffs).

*Christopher P. Kriesen*, with whom, on the brief, was *Katherine L. Matthews*, for the appellee (defendant).

DiPENTIMA, C. J. This appeal arises out of a motor vehicle accident on an early April morning that resulted in the death of seventeen year old Richard Tyler Horrigan (decedent). His parents, the plaintiffs, Richard Horrigan and Kathleen Horrigan, coadministrators of the decedent's estate,[1] appeal from the trial court's denial of their motion to set aside the verdict and for a new trial, as well as the trial court's judgment rendered following the jury verdict in favor of the defendant, the town of Washington. The plaintiffs claim that (1) the jury's finding that the open storm drain on Baldwin Hill Road was not a defect was clearly erroneous, (2) the court erred in refusing to instruct the jury that the defendant had a duty to provide a fence or rail to guard the drainage hole, (3) the court erred in refusing to instruct the jury to use a prudent person of like age standard to determine whether the decedent breached his common-law duty, and (4) the court erred in admitting into evidence the testimony of the defendant's expert. Because our determination that the plaintiffs cannot prevail on their first claim is dispositive, we do not address the remaining claims. Accordingly, we affirm the trial court's judgment.

The following facts reasonably could have been found by the jury. On the morning of April 9, 2003, the decedent was driving himself and his younger brother from their home to school. The decedent and his brother traveled up Baldwin Hill Road in Washington and the decedent's motor vehicle slid on a patch of black ice on a straight portion of the road. The motor vehicle slid to the side of the road because it did not have a strong grip and it eventually ended up on the road's shoulder. The vehicle

---

[1] The plaintiffs mistakenly commenced this action as the parents and next friends of the decedent. On July, 5, 2005, the court granted their motion to be substituted as the plaintiffs in their capacities as coadministrators of the decedent's estate.

recovered some traction when it went onto the shoulder, but then "the front of the [vehicle] just sunk down, and . . . that was the end basically." The decedent's brother stated in the police report that "it felt like something caused the wheel maybe—(maybe a hole) to go down, and the vehicle vaulted." After the driver's side of the vehicle "sunk down" into the drainage hole, the motor vehicle flipped onto its roof and struck a utility pole. After the vehicle came to rest, both the decedent and his brother were in their seats, with their seat belts on, but they were both turned upside down. The decedent was unresponsive to any attempts to get him to speak and was pronounced dead at the scene.

The plaintiffs brought the underlying action in a two count complaint against the defendant pursuant to General Statutes § 13a-149[2] in April, 2005. In the first count, the plaintiffs alleged that the storm drain was "designed, installed and intended" to drain water from the "traveled portion of the roadway" on Baldwin Hill Road and to "prevent water from the shoulder of the roadway and from the adjacent property from flowing into the travel lanes." The plaintiffs alleged further that the decedent's vehicle lost traction because of ice on Baldwin

---

[2] General Statutes § 13a-149 provides: "Any person injured in person or property by means of a defective road or bridge may recover damages from the party bound to keep it in repair. No action for any such injury sustained on or after October 1, 1982, shall be brought except within two years from the date of such injury. No action for any such injury shall be maintained against any town, city, corporation or borough, unless written notice of such injury and a general description of the same, and of the cause thereof and of the time and place of its occurrence, shall, within ninety days thereafter be given to a selectman or the clerk of such town, or to the clerk of such city or borough, or to the secretary or treasurer of such corporation. If the injury has been caused by a structure legally placed on such road by a railroad company, it, and not the party bound to keep the road in repair, shall be liable therefore. No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury or in stating the time, place or cause of its occurrence, if it appears that there was no intention to mislead or that such town, city, corporation or borough was not in fact misled thereby."

Hill Road and struck the storm drain causing it to vault and collide with a utility pole. Finally, the plaintiffs alleged that as a result of the design of the storm drain, the storm drain was a defective condition and was the sole proximate cause of the decedent's death. In the second count, the plaintiffs alleged that the defendant knew or reasonably should have known that the storm drain was a defective condition, and that the defendant failed to take reasonable action to correct or warn of such defective condition, and further that the ice on Baldwin Hill Road was a dangerous and defective condition. Returning a verdict in favor of the defendant, the jury answered fourteen interrogatories. The first of those interrogatories stated: "Do you find that, at the time of the April 9, 2003 accident involving the vehicle driven by [the decedent], Baldwin Hill Road was not reasonably safe for public travel by reason of the presence of the open storm drain on the shoulder of the road?" The jury responded: "No."[3]

Thereafter, the plaintiffs filed a motion to set aside the verdict and for a new trial, claiming that the court erred (1) in its charge as to whether an open storm drain on the shoulder of Baldwin Hill Road constituted a defect, (2) in failing to charge the jury that, as a matter of law, the public would be expected to use the shoulder of Baldwin Hill Road in an emergency, (3) in its charge regarding the decedent's comparative negligence and (4) in allowing the defendant's expert to testify. The court denied the motion. This appeal followed. Additional facts and procedural history will be set forth as necessary.

The plaintiffs' principal claim is that the jury's finding that the storm drain was not a defect was clearly erroneous. The plaintiffs argue that the "overwhelming evidence at trial clearly established that the uncovered

_____

[3] Although the jury did not find that the open storm drain constituted a defect pursuant to § 13a-149, the jury *did* find that on the day of the accident, Baldwin Hill Road was not reasonably safe for public travel due to the

and unguarded drainage hole . . . made travel unreasonably unsafe and was a 'defect' within the meaning of . . . § 13a-149," and that, therefore, the jury's finding of no defect "can only be explained as a mistake, and is clearly erroneous." We are not persuaded.

We first note that this claim was not presented to the trial court. In their motion to set aside the verdict, the plaintiffs challenged the court's instructions and argued there was error in the court's charge as to whether an open storm drain was a defect. In the motion, the plaintiffs stated that "the [c]ourt's charge precluded the jury from ever finding in the plaintiffs' favor and, in fact, mandated that the jury find that the open storm drain in question did not render Baldwin Hill Road defective."[4] The motion did not explicitly challenge the jury's conclusion that there was no defect.[5] Despite that omission, we review the jury's finding of no defect. See *Santopietro* v. *New Haven*, 239 Conn. 207, 214–15, 682 A.2d 106 (1996).

"We are disinclined to disturb jury verdicts, and we accord great deference to the vantage of the trial judge, who possesses a unique opportunity to evaluate the credibility of witnesses. . . . The concurrence of the judgments of the [trial] judge and the jury . . . is a powerful argument for upholding the verdict. . . . Furthermore, it is not the function of this court to sit as the seventh juror when we review the sufficiency of the evidence . . . rather, we must determine, *in the light most favorable to sustaining the verdict,* whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . . In

---

presence of ice. The jury also found that the failure of the decedent to use due care in the operation of his vehicle was a proximate cause of his injuries.

[4] This claimed instructional error is not raised in this appeal.

[5] The motion's opening sentence states: "The plaintiffs, though counsel, hereby move to set aside the jury's verdict in favor of the defendant and, further, move for a new trial upon the grounds that the verdict is contrary to the law and against the weight of the evidence."

making this determination, [t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. . . . In other words, [i]f the jury *could* reasonably have reached its conclusion, the verdict must stand . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gaudio* v. *Griffin Health Services Corp.*, 249 Conn. 523, 534, 733 A.2d 197 (1999). "[I]t is only in a rare case, for instance, that, as a matter of law, it can be said that the jury [is] compelled to accept as true the plaintiff's evidence supporting the essential allegations of [a] complaint, even if it appears such evidence might be uncontradicted." *Hally* v. *Hospital of St. Raphael*, 162 Conn. 352, 358, 294 A.2d 305 (1972), citing *Silva* v. *Hartford*, 141 Conn. 126, 127–28, 104 A.2d 210 (1954); see also *Nielson* v. *D'Angelo*, 1 Conn. App. 239, 247, 471 A.2d 965, cert. dismissed, 193 Conn. 801, 474 A.2d 1259 (1984). We conclude that this is not one of those rare cases requiring reversal of the jury's determination.

"A defect in a highway has been described as any object or condition in, upon, or near the traveled path which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result." (Internal quotation marks omitted.) *Trotta* v. *Branford*, 26 Conn. App. 407, 410, 601 A.2d 1036 (1992). "It is true that there may be situations where the source of danger, although situated without the way, is of itself so direct a menace to travel over the way and so susceptible to protection or remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a failure to exercise reasonable care to keep the highway reasonably safe. . . . But a municipality is not an insurer against accidents occurring on its highways; its duty is not to make its streets absolutely

safe for the users thereof but only to exercise reasonable care to keep them in a reasonably safe condition for travel. . . . Whether a condition in a highway constitutes a defect must be determined in each case on its own particular circumstances. Generally, the question whether a highway is defective is one of fact, depending on a great variety of circumstances . . . ." (Citations omitted.) *Chazen* v. *New Britain*, 148 Conn. 349, 353, 170 A.2d 891 (1961); see also *Ferreira* v. *Pringle*, 255 Conn. 330, 350, 766 A.2d 400 (2001) ("[w]hether the place of injury is within the . . . right-of-way line is the threshold inquiry in determining whether the condition complained of falls under § 13a-149" [internal quotation marks omitted]); *Serrano* v. *Burns*, 248 Conn. 419, 426, 727 A.2d 1276 (1999) ("[w]hether there is a defect in such proximity to the highway so as to be considered in, upon, or near the traveled path of the highway must be determined on a case-by-case basis after a proper analysis of its own particular circumstances, and is generally a question of fact for the jury, which will not be disturbed by this court unless the conclusion is one which could not be reasonably reached by the trier" [internal quotation marks omitted]).

The plaintiffs argue that "[t]he overwhelming evidence at trial clearly established that the uncovered and unguarded drainage hole on the shoulder of Baldwin Hill Road barely three feet from the paved roadway made travel unreasonably unsafe and was a 'defect' within the meaning of . . . § 13a-149 [and that] [t]he jury's finding to the contrary can only be explained as a mistake and is clearly erroneous." Pursuant to *Trotta* v. *Branford*, supra, 26 Conn. App. 410, the jury needed to find that the drain "necessarily obstruct[ed] or hinder[ed] one in the use of the road for the purpose of traveling thereon . . . ." In its charge to the jury, the court stated that, as a matter of law, the "area in which the storm drain is located is expected to be used by

travelers." Thus, the jury was given the task of determining whether the plaintiffs had met their burden to prove that the drain, while located in an area expected to be used by travelers, *necessarily* obstructed or hindered the use of the road.

There was sufficient evidence to support the jury's finding that the plaintiffs did not meet this burden. "[T]he analysis under § 13a-149 centers on the word 'defect' and not on the word 'road.' " *Ferreira* v. *Pringle*, supra, 255 Conn. 357. Although the jury was instructed that the drain was in the traveled portion of the road, it was up to the jury to determine whether it necessarily obstructed or hindered the use of the road. There was evidence that the drain was placed off of the paved portion of the road, and that the majority of traffic was on the paved portion. Further, as in *Chazen*, evidence suggested that the drain was placed out of the direct line of traffic so as not to obstruct traffic. Matthew Somerset, a former worker for the defendant familiar with the storm drains on Baldwin Hill Road, testified that the drains were intended to catch surface water from the road and that they had pipes leading out of them in order to facilitate draining the road runoff. Somerset also testified that there were two wooden posts placed near the subject drain on Baldwin Hill Road. Somerset testified that these posts were roughly eight to ten inches in circumference and were buried approximately three to five feet into the ground. Using a photograph provided by the defendant's counsel, Somerset pointed to the existing posts at the scene of the accident. Finally, Somerset testified that the posts were not placed to prevent cars from falling into the drain.

Richard Binkowski, a state police trooper and trained accident reconstructionist, described the storm drain as "kind of like a trough . . . concrete edges and a concrete back but there was no actual, if you understand, was no actual front. It was kind of like a rectangle

with no front to it . . . ." Binkowski testified from his accident report filed in 2003 that Baldwin Hill Road is "a level roadway measuring approximately [twenty-three] feet across. There are no lane markings and no fog lines." He testified further that, at the accident scene, there were tire tracks leading "off of the north shoulder of the roadway and traveling into and east along the soft grass and dirt shoulder." Binkowski testified that it was approximately three feet, three inches from the side of the road to the south edge of the drain and three feet to the north edge, and that the drain was two and one-half feet wide and four feet, ten inches long. Finally, Binkowski testified that the decedent's vehicle slid seventy four feet, ten inches before its front tire hit the drain.

On the basis of the police report of the accident, the testimony presented at trial and the multiple photographs of the accident scene introduced at trial, the jury reasonably could have concluded that the drain was, as the court instructed, "in the area . . . expected to be used by travelers," but not in a position so as to "necessarily obstruct or hinder" the common use of the road. The evidence showed that the drain was more than three feet from the paved portion of the road and that it was placed in its position specifically for the purpose of making the paved portion of the road safer by draining excess water. Thus, the jury reasonably could have inferred that the drain was not an unaccounted for obstruction, like, for example, a pothole or an exposed culvert in the paved portion. Testimony indicated that there were wooden posts of a visible size, which identified the location of the drain to passersby. Although the court instructed the jury that the drain was in a portion of the road expected to be used by travelers, the jury reasonably could have inferred from the evidence and testimony that this use was dissimilar to the use of the paved portion of the road and that

the drain was placed, like other drains on Baldwin Hill Road, in order to increase the safety of the road in general. See *Chazen* v. *New Britain*, supra, 148 Conn. 353–54 ("When our residential streets are laid out, it is common practice to provide space for purposes other than those of ordinary travel. These areas are still a part of the street, and the municipality is bound to use reasonable care to keep them in a reasonably safe condition for travelers, subject to the qualification that the duty resting on the city with regard to the maintenance of such areas and the duty resting on the traveler with regard to their use are quite different from the duties imposed with regard to a sidewalk or the traveled portion of the street."). Viewing the evidence in the light most favorable to sustaining the verdict, and with great deference to the jury's role in viewing the witnesses and evidence; see *Gaudio* v. *Griffin Health Services Corp.*, supra, 249 Conn. 534; we decline to disturb the jury's determination that the storm drain was not a defect under § 13a-149.

The plaintiffs further claim that the court erred in refusing to instruct the jury that the defendant had a duty to provide a fence or rail to guard the storm drain, refusing to instruct the jury to use a prudent person of like age standard to determine whether the decedent breached his common-law duty, and admitting into evidence the testimony of the defendant's expert. In order for a plaintiff to prevail in an action brought under § 13a-149, the jury must find a defective condition as alleged in the complaint. Because the jury here did not do so, no purpose will be served in addressing the plaintiffs' other claims.

The judgment is affirmed.

In this opinion the other judges concurred.