******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID GIANNONI ET AL. *v.* COMMISSIONER
OF TRANSPORTATION
(SC 19522)

Rogers, C. J., and Palmer, Zarella, Eveleigh, Espinosa and Robinson, Js.

*Argued December 11, 2015—officially released August 9, 2016*

*Ronald D. Williams, Jr.*, for the appellant (defendant).

*Joseph P. Sargent*, for the appellees (plaintiffs).

*Opinion*

ROBINSON, J. The plaintiffs, David Giannoni and Michelle Giannoni, brought this highway defect action pursuant to General Statutes § 13a-144[1] on behalf of their child, Nicholas Giannoni (Nicholas), who was injured when he fell into a stream culvert while riding his bicycle on the sidewalk along a state highway, which ended at a private driveway and lawn shortly before the culvert. The defendant, the Commissioner of Transportation (commissioner), appeals from the trial court's denial of his motion to dismiss the plaintiffs' complaint for lack of subject matter jurisdiction on the ground of sovereign immunity.[2] The commissioner argues that the trial court improperly concluded that the plaintiffs' complaint and the evidence in this case support a cause of action, and associated waiver of the state's sovereign immunity, under § 13a-144 because: (1) Nicholas was not a "traveler" on the state highway when he fell into the culvert; and (2) the culvert does not constitute a "highway defect" under § 13a-144. We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following undisputed facts and procedural history.[3] On October 22, 2011, at approximately 7 p.m., Nicholas was riding his bicycle along Route 113 in Stratford (town), a highway maintained by the Department of Transportation (department), toward a friend's house.[4] After stopping at a convenience store on Route 113 to purchase food, he proceeded northeast on Route 113. Because the convenience store was located on the southbound side of the road, and Nicholas intended to turn left onto Cutspring Road in a few hundred feet, he rode northeast against traffic on the southbound side of the road.

After several minutes, Nicholas moved to the sidewalk adjacent to Route 113 on the left side because "[t]he headlights were hitting [his] eyes" and "the cars were going pretty fast . . . ." This particular sidewalk ended after forty yards at a private driveway and lawn, and led directly to a stream culvert that collects and removes water from under Route 113. When the sidewalk ended, Nicholas inadvertently rode his bicycle across the private driveway, over the small patch of grass, and into the culvert, injuring himself.

The culvert is located approximately nine feet from the paved shoulder of the road, within the state right-of-way.[5] The department maintains the culvert, which is six inches deep and constructed of cement retaining walls.[6] At the time of the accident, the culvert was covered with overgrown weeds and brush. Three wooden posts warned travelers approaching from the roadway of the existence of the culvert, but no posts, signs, or barriers warned travelers approaching from the sidewalk of the culvert. Nicholas testified that he did not see the posts because they were facing another

direction, the sun had set, and the headlights from oncoming traffic continued to hit his eyes. There were no street lights in the area that could have illuminated the culvert, and no crosswalk in the intersection ahead. Nicholas also testified that he had never ridden his bicycle in the area before.

The plaintiffs brought the present highway defect action on behalf of Nicholas. The commissioner moved to dismiss the complaint on the ground of sovereign immunity, arguing that the plaintiffs' claim falls outside the purview of § 13a-144. The trial court denied the commissioner's motion, stating that "the evidence indicates the accident happened on the state . . . right-of-way and not a sidewalk or a lawn" and that "certain issues will have to be determined by the trier of fact." This appeal followed. See footnote 2 of this opinion.

On appeal, the commissioner renews his contention that the plaintiffs have failed to allege a cognizable highway defect claim under § 13a-144. Specifically, the commissioner claims that: (1) Nicholas was not a traveler on Route 113 when he fell into the culvert, but rather, a traveler on the sidewalk; and (2) the culvert does not constitute a highway defect under § 13a-144 because it is not located in an area intended for public travel.[7]

Before turning to the commissioner's specific claims on appeal, we set forth certain background principles and the standard of review. "It is the established law of our state that the state is immune from suit unless the state, by appropriate legislation, consents to be sued." *Baker* v. *Ives*, 162 Conn. 295, 298, 294 A.2d 290 (1972). "The legislature waived the state's sovereign immunity from suit in certain prescribed instances by the enactment of § 13a-144." Id. The statute "imposes the duty to keep the state highways in repair upon the . . . commissioner"; (internal quotation marks omitted) *Kozlowski* v. *Commissioner of Transportation*, 274 Conn. 497, 501, 876 A.2d 1148 (2005); and authorizes civil actions against the state for injuries caused by "the neglect or default of the state . . . by means of any defective highway . . . ." General Statutes § 13a-144; see footnote 1 of this opinion. "There being no right of action against the sovereign state at common law, the plaintiff[s] must prevail, if at all, under § 13a-144." *Baker* v. *Ives*, supra, 298.

"[T]he doctrine of sovereign immunity implicates [a court's] subject matter jurisdiction and is therefore a basis for granting a motion to dismiss." *Amore* v. *Frankel*, 228 Conn. 358, 364, 636 A.2d 786 (1994). "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 501. In ruling on a motion

to dismiss for lack of subject matter jurisdiction, the trial court "must consider the allegations of the complaint in their most favorable light . . . including those facts necessarily implied from the allegations . . . ." (Internal quotation marks omitted.) Id. A trial court considering a motion to dismiss may, however, "encounter different situations, depending on the status of the record in the case." *Conboy* v. *State*, 292 Conn. 642, 650, 974 A.2d 669 (2009). "[I]f the complaint is supplemented by undisputed facts . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]." (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id., 651–52. Conversely, "where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 652–54. The trial court "may [also] in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred." Id., 653 n.16.

We review a trial court's denial of a motion to dismiss on the ground of sovereign immunity, based on an application of § 13a-144, de novo. See, e.g., *Serrano* v. *Burns*, 248 Conn. 419, 425, 727 A.2d 1276 (1999). "[W]hether a highway is defective may involve issues of fact, but whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law" over which we exercise plenary review. (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, 274 Conn. 262, 268, 875 A.2d 459 (2005); see *Serrano* v. *Burns*, supra, 425. "In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Conboy* v. *State*, supra, 292 Conn. 650.

I

We first consider whether the complaint and the evidence in the record support a conclusion that Nicholas remained a traveler over the state highway when he moved to the sidewalk along Route 113. The commis-

sioner claims that, as a matter of law, Nicholas was not a traveler on Route 113 because he was, instead, a traveler on the sidewalk. In response, the plaintiffs argue that a jury could find that Nicholas retained his status as a traveler over Route 113 when he moved to the sidewalk, because his travel over the sidewalk was incidental to and for a purpose connected with his travel over Route 113. We agree with the plaintiffs, and conclude that the trial court properly denied the motion to dismiss on this ground because the record in this case would support a finding that Nicholas retained his status as a traveler on Route 113.

"It is settled law that the statutory right of action is given only to a traveler on the road or sidewalk alleged to be defective." *Tuckel* v. *Argraves*, 148 Conn. 355, 358, 170 A.2d 895 (1961). "A person must be on the highway for some legitimate purpose connected with travel thereon in order to obtain the protection of the statute." *Hay* v. *Hill*, 137 Conn. 285, 289–90, 76 A.2d 924 (1950); see also *Anderson* v. *Argraves*, 20 Conn. Supp. 138, 143, 127 A.2d 620 (1956) (statute "provides no right of recovery to an abutting landowner for damages from a defective highway . . . [it] is designed to protect travelers only" [internal quotation marks omitted]), aff'd, 146 Conn. 316, 150 A.2d 295 (1959).

A person may, under some circumstances, traverse areas adjacent to the conventionally traveled highway while maintaining his status as a traveler entitled to bring an action under § 13a-144. For example, this court has held that a traveler on the highway may include a person traveling on the shoulder of the road; *Griffith* v. *Berlin*, 130 Conn. 84, 87, 32 A.2d 56 (1943); grassy areas abutting the road; *Ferreira* v. *Pringle*, 255 Conn. 330, 343–44, 766 A.2d 400 (2001); *Baker* v. *Ives*, supra, 162 Conn. 299–302; *Hay* v. *Hill*, supra, 137 Conn. 289–90; and even the parking lot of a rest area along the highway. *Serrano* v. *Burns*, supra, 248 Conn. 429. Travel over such areas may fall within the purview of § 13a-144 when it is "incidental" to travel over the highway; (internal quotation marks omitted) *Ferreira* v. *Pringle*, supra, 344; and for a "purpose connected with travel thereon . . . ." (Internal quotation marks omitted.) Id., 342; see also *O'Neil* v. *New Haven*, 80 Conn. 154, 156–57, 67 A. 487 (1907). Indeed, travel over such areas may be necessary to meet certain "exigencies of travel" over the highway. *Hay* v. *Hill*, supra, 290. "[A] plaintiff is not obliged to remain seated in a vehicle proceeding on the highway. Reasonable latitude is allowed to meet the exigencies of travel." Id. "[T]he question is one of degree and fact. Within reasonable limits it is for the jury." Id.; see also *Bellman* v. *West Hartford*, 96 Conn. App. 387, 394, 900 A.2d 82 (2006).

For example, in *Ferreira* v. *Pringle*, supra, 255 Conn. 352, we concluded that a bus passenger disembarking from a bus onto a grassy area adjacent to the highway

retained his status as a traveler over the highway because "bus travel necessarily dictates that passengers disembark on the side of the road in connection with the use of the bus and for purposes of public travel." Because the bus passenger did not leave the highway "for a purpose other than traveling over the highway," his claim fell within the ambit of General Statutes § 13a-149, the municipal highway defect statute.[8] Id., 351; see also id., 351–55 (affirming dismissal of claim because plaintiff did not invoke statute). Similarly, in *Serrano* v. *Burns*, supra, 248 Conn. 429, this court, in reversing dismissal of an action, held that a jury reasonably could find that a pedestrian who had slipped on ice in the parking lot of a rest area along the highway was still a traveler on the highway when she fell, because her use of the rest area was "so closely related to [her] travel upon the highway . . . ." Id. In *Hay* v. *Hill*, supra, 137 Conn. 286–90, this court held that a motor vehicle passenger remained a traveler over the highway when she exited a vehicle, which had pulled over on the highway, walked across some shrubs and weeds next to the highway, and then fell into an unguarded culvert eight to twelve feet from the road.

By contrast, when a person "voluntarily depart[s] from the traveled way, and turn[s] aside from [their] journey for a purpose in no way connected with [their] passage over the highway," that person loses their status as a traveler over the highway. *O'Neil* v. *New Haven*, supra, 80 Conn. 156. For example, in *O'Neil*, this court held that a cart driver was not a traveler over the highway when he left the traveled portion of the highway to use platform scales owned and operated by a private party. Id., 155–57. With respect to the driver's apparent intention to return to the highway, this court stated: "The fact that he had but shortly before been using the street for travel, and intended to soon resume his passage over it, made him no more a traveler thereon than he would have been had his digression for an independent purpose been of longer duration . . . ." Id., 156–57.

The salient question in the present case is, therefore, whether Nicholas, as a bicyclist, retained his status as a traveler on the highway when he moved from the shoulder of the road to the sidewalk along Route 113. On the facts of this case, we conclude that the record could support a finding that Nicholas was a traveler over the highway when he fell into the culvert, because his travel over the sidewalk was "incidental" to; (internal quotation marks omitted) *Ferreira* v. *Pringle*, supra, 255 Conn 344; and for a "purpose connected with" his travel over Route 113.[9] (Internal quotation marks omitted.) Id., 342; see also *O'Neil* v. *New Haven*, supra, 80 Conn. 156. A jury could reasonably find that Nicholas temporarily moved to the sidewalk to meet an "exigenc[y] of travel" over Route 113. *Hay* v. *Hill*, supra, 137 Conn. 290. Nicholas testified that he moved to the

sidewalk to avoid the fast moving, oncoming cars on the highway.[10] He stated that, "[t]he headlights were hitting my eyes . . . [a]nd . . . the cars were going pretty fast, so I just thought it would be safer . . . to go on the sidewalk." We have previously recognized that "modern traffic" may constitute an exigency requiring a traveler to depart from the traveled portion of the highway.[11] (Internal quotation marks omitted.) *Ferreira* v. *Pringle*, supra, 347; see also *Rusch* v. *Cox*, 10 Conn. Supp. 521, 526 (1942) (noting that highway includes shoulder of road and concluding that "the layout [of the highway] was such as almost to amount to a trap for those, who in the night season, might drive upon the shoulder for emergency use or in the exercise of unusual caution, due to the exigency of modern traffic"), aff'd, 130 Conn. 26, 31 A.2d 457 (1943). Thus, a finder of fact could determine that the "[r]easonable latitude" afforded to travelers on the highway may extend to a thirteen year old bicyclist moving from the shoulder of the road to the sidewalk, at night, while preparing to make a left turn. *Hay* v. *Hill*, supra, 290. A jury might also reasonably find that Nicholas left the highway altogether when he moved to the sidewalk and, consequently, lost his status as a traveler over the highway. This determination, however, is one for the fact finder. We simply hold that we cannot conclude, as a matter of law, that Nicholas "voluntarily departed from the traveled way, and *turned aside from his journey* for a purpose *in no way connected* with his passage over the highway" at this juncture.[12] (Emphasis added.) *O'Neil* v. *New Haven*, supra, 156. Rather, Nicholas' travel over the sidewalk, driveway, and small patch of lawn reasonably could be found to be "so closely related" to his travel over the highway, that he retained the protections of § 13a-144 while on the sidewalk.[13] *Serrano* v. *Burns*, supra, 248 Conn. 429.

Relying heavily on *Tuckel* v. *Argraves*, supra, 148 Conn. 355, the commissioner and the dissent argue, however, that, as a matter of law, Nicholas was a traveler on the *sidewalk*, and not the highway, when he fell into the culvert, and thus, his travel over the driveway and small patch of grass was incidental to and for a purpose connected with his travel over the sidewalk. It is undisputed that Nicholas was traveling over the sidewalk immediately before he fell into the culvert. This fact alone, however, does not preclude a jury from finding that his travel over the sidewalk, driveway, and small patch of grass, was incidental to and for a purpose connected with his travel over Route 113. On these facts, the two are not mutually exclusive. Bicyclists may utilize the shoulders of the road *or* the sidewalks along a road when attempting to travel over a highway, unless prohibited by a city or town ordinance. See General Statutes (Rev. to 2011) § 14-286 (a).[14] The commissioner points to no ordinance of the town prohibiting bicycling on the sidewalk, and our independent

research has revealed none. See Stratford Code of Ordinances, c. 186 (streets and sidewalks); Stratford Code of Ordinances, c. 203 (vehicles and traffic). Thus, bicyclists in the town may be classified as travelers over the sidewalk or highway at different points throughout their journey, and whether they retain their status as a traveler over the highway when they move to the sidewalk is a "question . . . of degree and fact" for the jury. *Hay* v. *Hill*, supra, 137 Conn. 291. Here, because Nicholas began his journey on the shoulders of the highway and moved to the sidewalk out of safety concerns, we cannot say, as a matter of law, that Nicholas did not retain his status as a traveler over the highway when he moved to the sidewalk and fell into the culvert.[15] Accordingly, the trial court properly denied the commissioner's motion to dismiss on this ground.[16]

## II

We next consider the commissioner's claim that the trial court improperly denied his motion to dismiss because the plaintiffs failed to allege sufficient facts from which a jury could find that the culvert constitutes a highway defect actionable under § 13a-144. The plaintiffs alleged in their complaint that the culvert is defective because the commissioner failed to erect a "fence, rail, or a barrier" near the sidewalk to warn pedestrians and bicyclists approaching from the sidewalk of the existence of the culvert, to provide "reasonable lighting" near the culvert, and/or to "reasonably maintain the area," which was "overgrown with grass, foliage and . . . brush" that concealed the existence of the culvert. The commissioner claims, however, that the culvert cannot constitute a highway defect as a matter of law because it is in an area unintended for public travel. In response, the plaintiffs argue that because the sidewalk led directly to the culvert, and bicyclists were invited and expected to utilize the sidewalk in connection with their travel over Route 113, a jury could find that the state reasonably should have expected bicyclists to traverse the culvert area, albeit by accident. Thus, the plaintiffs assert that the state should have maintained the culvert in a manner such that bicyclists and pedestrians approaching the culvert from the sidewalk would be alerted to its existence. We agree with the plaintiffs, and conclude that the record in this case could support a finding that the culvert was a highway defect under § 13a-144, because it may be an area in which the state reasonably should have expected bicyclists and pedestrians to travel.[17]

"[A] highway defect is [a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . ." (Internal quotation marks omitted.) *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 502–

503. "[T]he defect need not be a part of the roadbed itself," however, "objects which have no necessary connection with the roadbed or public travel, which expose a person to danger, not as a traveler, but independent of the highway, do not ordinarily render the road defective." *Comba* v. *Ridgefield*, 177 Conn. 268, 270, 413 A.2d 859 (1979).

The defective condition must also exist in an area intended for public travel, or in an area that the public is invited or reasonably expected to traverse. See *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 504–505; *Chazen* v. *New Britain*, 148 Conn. 349, 353, 170 A.2d 891 (1961). "[If] the state either invites or reasonably should expect the public to use a particular area that is not directly in the roadway but that is a necessary incident to travel on the roadway, a defective condition therein may give rise to a cognizable action under the statute." *Kozlowski* v. *Commissioner of Transportation*, supra, 504–505. The fact that the defective condition is in an area where members of the public are "likely, and in fact encouraged, to use is an important consideration." *Baker* v. *Ives*, supra, 162 Conn. 301–302.

"Whether a condition in a highway constitutes a defect must be determined in each case on its own particular circumstances." *Chazen* v. *New Britain*, supra, 148 Conn. 353. "[The state] is not bound to make the roads absolutely safe for travel. . . . Rather, the test is whether . . . the state has exercised reasonable care to make and keep such roads in a reasonably safe condition for the reasonably prudent traveler." (Internal quotation marks omitted.) *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 503. "To define in general terms the precise limits of the duty of [the commissioner] in these cases is not an easy matter . . . ." (Internal quotation marks omitted.) *McIntosh* v. *Sullivan*, supra, 274 Conn. 273. "Generally, the question . . . is one of fact, depending on a great variety of circumstances, and this court will find error only when the conclusion is one which could not be reasonably reached by the trier." *Chazen* v. *New Britain*, supra, 353.

As noted previously, this court has recognized that defective conditions in areas *unintended* for public travel, in the strict sense, may nonetheless qualify as highway defects if the state *reasonably should have expected* the public to traverse the area in connection with their travel over the highway.[18] See *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 504–505. For example, in *Hay* v. *Hill*, supra, 137 Conn. 286–91, this court held that an unguarded culvert eight to twelve feet from the road could constitute a highway defect, when the passenger of a motor vehicle exited the vehicle, walked across some shrubs and weeds adjacent to the highway, and fell into the culvert. Likewise,

in *Baker* v. *Ives*, supra, 162 Conn. 300–301, this court concluded that a grassy area between a parking space and sidewalk along a highway that had accumulated snow and ice could constitute a highway defect, when a motorist that had parked her car slipped and fell in the area, thirty-two feet from the road, while attempting to reach the sidewalk. The court stated in *Baker* that, "[t]his is not a situation where the [motorist] crossed an area not intended for pedestrian travel . . . the public in general were encouraged to use this area for parking and it was reasonably to be expected that after parking her car the [motorist] would cross the . . . area to reach the sidewalk." (Citation omitted.) Id., 301. We similarly concluded in *Ferreira* v. *Pringle*, supra, 255 Conn. 334, 352, that the stub of a signpost embedded in the grass along a highway seven feet from the road could constitute a highway defect, when a passenger disembarking from a bus stepped on the signpost and injured himself. We reasoned that "it is clear . . . that the defective condition was in an area where bus passengers were likely, and in fact encouraged, to disembark . . . ." (Citation omitted.) Id., 350; see also *Serrano* v. *Burns*, supra, 248 Conn. 429 (icy parking lot of rest area along highway could constitute highway defect because state invited motorists to use rest area, and there was "no significant difference" between area "adjacent to the traveled portion of a highway" and area "away from the traveled portion of the highway" that state invited public to use).

Conversely, defective conditions in areas where the public was neither invited nor reasonably expected to traverse cannot, as a matter of law, constitute a highway defect. For instance, we held in *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 502–504, that a catch basin with a faulty cover, located in a grass area adjacent to the highway, could not, as a matter of law, constitute a highway defect. We reasoned that "while the catch basin is near the roadway . . . it is in an area unintended for automobile or pedestrian travel." Id., 504. We further reasoned that "it is clear that the public is neither invited nor expected to traverse the catch basin area." Id., 505. Similarly, in *Chazen* v. *New Britain*, supra, 148 Conn. 353, this court held that an unguarded ditch five feet from the roadway could not constitute a highway defect, when a motorist fell into the ditch after parking his vehicle and crossing a patch of unmowed grass to reach a public park, rather than utilize the "traveled way" to the park. The court noted that "[i]n taking the route he did, [the motorist] chose to cross an area which was not intended for pedestrian travel." Id., 352. The court further explained that: "When our residential streets are laid out, it is common practice to provide space for purposes other than those of ordinary travel. . . . The general proposition that the public is entitled to the free use of any part of a public street must be accepted with the qualification that certain

portions of the street may, for the benefit and convenience of the public, be devoted to purposes other than travel. . . . Since it is not intended that there shall be travel on such areas, travelers who leave the way provided for them and attempt to cross such areas may not assume that the areas are free from danger or unusual conditions . . . ."[19] Id., 353–54.

We conclude that the trial court properly denied the commissioner's motion to dismiss because a jury reasonably could find that the state reasonably should have expected the public to traverse the culvert area, which would render the culvert a highway defect actionable under § 13a-144.[20] A jury could reach this conclusion because: (1) the sidewalk led directly to the culvert; (2) the sidewalk *is* an area intended for public travel; and (3) bicyclists were invited and reasonably expected to utilize the sidewalk, when necessary, in connection with their travel over Route 113. See *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 504–505. The culvert, at nine feet from the road, is nearly identical to that considered in *Hay*, which was eight to twelve feet from the road. See *Hay* v. *Hill*, supra, 137 Conn. 281–88. Additionally, members of the public were "likely, and in fact encouraged" to use the sidewalk when traveling on Route 113—albeit by the town, rather than the state—as in *Baker* and *Ferreira*. See *Ferreira* v. *Pringle*, supra, 255 Conn. 350; *Baker* v. *Ives*, supra, 162 Conn. 299; see also *Rivers* v. *New Britain*, 288 Conn. 1, 22 n.18, 950 A.2d 1247 (2008) ("[w]hen a municipality places a sidewalk next to a road, it invites pedestrians to use the sidewalk"). Pedestrians were actually required to use the sidewalk; see General Statutes § 14-300c (a); *Bellman* v. *West Hartford*, supra, 96 Conn. App. 394 (duty under highway defect statute "extends to pedestrian travel as well as to vehicular traffic" [internal quotation marks omitted]); and bicyclists could utilize the sidewalk as a "necessary incident" to their travel over Route 113. *Kozlowski* v. *Commissioner of Transportation*, supra, 504.

More importantly, because the sidewalk led directly to the culvert, a jury reasonably could find that this unique fact brings the plaintiffs' claim within the purview of § 13a-144. See, e.g., *Bartlett* v. *Metropolitan District Commission*, 125 Conn. App. 149, 161, 7 A.3d 414 (2010) (storm drain maintained by municipal authority, located on sidewalk maintained by city, could constitute highway defect under § 13a-149; "[s]ince the cover of the storm drain was located on a sidewalk, it was reasonable to anticipate that the public would encounter it in the ordinary course of travel"), cert. denied, 300 Conn. 913, 13 A.3d 1101 (2011). Thus, a jury reasonably could conclude that without posts facing the sidewalk, adequate lighting in the area, and sufficient maintenance of the brush that concealed the culvert, those using the sidewalk—bicyclists in particular—might attempt to continue their journey by crossing

the driveway and grass, and inadvertently fall into the culvert without realizing that the sidewalk had ended, especially at night.[21] See *Hay* v. *Hill*, supra, 137 Conn. 289 (The jury could have reasonably concluded that the state "should have corrected the defect or protected [the culvert] by a railing or both. . . . It was a question of fact."). This element is missing from *Kozlowski* and *Chazen*, and we find those cases distinguishable on that basis. Unlike in *Kozlowski*, a jury might reasonably find that bicyclists could have been expected to accidentally traverse the culvert area due to the positioning of the sidewalk and culvert. See *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 504. Additionally, unlike the motorist in *Chazen*, a jury reasonably might find that Nicholas did not purposely "leave the way provided for [him]," and instead, fell into the culvert while attempting to recommence his travel over the state highway.[22] *Chazen* v. *New Britain*, supra, 148 Conn. 353.

The commissioner argues that, as a matter of law, a jury cannot find that the state reasonably should have expected the public to traverse the culvert area because the sidewalk ended at a private driveway and small patch of lawn shortly before the culvert. He claims that, because the driveway and lawn are on private property, members of the public were neither invited nor expected to traverse those areas and, thus, the state could not reasonably have expected members of the public to fall into the culvert. We disagree. "The term sidewalk is meant to apply to those areas that the public uses for travel." (Internal quotation marks omitted.) *Bellman* v. *West Hartford*, supra, 96 Conn. App. 395. "The essential feature of a public use is that it is not confined to privileged individuals or groups whose fitness or eligibility is gauged by some predetermined criteria, but is open to the indefinite public. It is the indefiniteness or unrestricted quality of potential users that gives a use its public character." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 147 Conn. App. 148, 158, 82 A.3d 647 (2013), aff'd, 315 Conn. 606, 109 A.3d 903 (2015). As such, this court has not necessarily found it dispositive that a plaintiff briefly crossed private property while attempting to travel over a public way. See, e.g., *Sedita* v. *Steinberg*, 105 Conn. 1, 5–8, 134 A. 243 (1926) (jury in tort case could find that pedestrian was in "lawful use of the public highway, with the legal status of a traveler" when he walked on private property between buildings and curb, because space was "entirely open, and apparently open for the use of all travelers who might choose to avail themselves of it . . . and not marked off from, the sidewalk proper"); *Crogan* v. *Schiele*, 53 Conn. 186, 197–98, 1 A. 899 (1885) (pedestrian did not necessarily cease to use highway as traveler when she stepped into unguarded opening on private property between building and sidewalk, concluding "[t]here was nothing to mark the exact line

of separation between the sidewalk and the [private] lot," and, thus, "[t]he entire space [from the street] to the [building] was apparently a public sidewalk: it does not appear [the pedestrian] knew anything to the contrary . . . the [landowner] had thrown open to the public and made part of the public domain that part of his property covered by th[e] extended sidewalk").[23] Rather, when it is unclear whether an area is "open to the public," we have generally left the question to the finder of fact. *Pramuka* v. *Cromwell*, 160 Conn. App. 863, 878, 127 A.3d 320 (2015); see also id. (whether parking lot and driveways on property of public school "are open to the public or contain sufficient restrictions that would limit their public availability cannot be determined on the basis of the record . . . and, in fact, may be questions more appropriately answered by a jury"), cert. denied, 320 Conn. 908, 128 A.3d 952 (2015); *Bellman* v. *West Hartford*, supra, 395 (court should have held evidentiary hearing to determine whether driveway of community center was "open [to] the public and . . . actually used by the public"; issue was "question for the fact finder"); see also *Klein* v. *Norwalk*, 305 Fed. Appx. 745, 747–48 (2d Cir. 2009) (drainage grate in municipal parking lot could constitute highway defect under § 13a-149 because pedestrians were expected and reasonably anticipated to traverse area, which was open to public, actually used by public, and incident to travel on surrounding roadways and sidewalks).[24]

In the present case, the sidewalk crosses at least two private driveways before the driveway leading to the culvert. Although these driveways create a temporary break in the sidewalk, the sidewalk evidently continues immediately beyond them. It may not appear to a pedestrian or bicyclist that he or she must revert to the shoulder of the road upon encountering these driveways, rather than simply cross the driveways and continue on the path of the sidewalk. Put differently, the presence of the driveway immediately before the culvert may not have indicated to a bicyclist or pedestrian that the sidewalk was ending. The small patch of lawn also does not appear significant enough to alert a bicyclist or pedestrian to this fact, at least in time for them to return to the road and avoid falling into the culvert.[25] Indeed, Nicholas testified at his deposition that he did not realize the sidewalk was ending when he fell into the culvert.[26] See *Bartlett* v. *Metropolitan District Commission*, supra, 125 Conn. App. 161 ("the term public travel refers to the normal or reasonably anticipated uses that the public makes of a highway in the ordinary course of travel" [internal quotation marks omitted]). Moreover, all of these features—the sidewalk, part of the driveway, and the small patch of lawn—are located within the state right-of-way line. A jury might therefore conclude that the state should have reasonably expected that pedestrians or bicyclists—especially bicyclists at night—would accidentally cross the drive-

way and small patch of grass and, before realizing that the sidewalk had ended, fall into the culvert.[27] Nicholas did just that, and the plaintiffs have, therefore, established a cognizable highway defect claim under § 13a-144. Accordingly, we conclude that the trial court properly denied the commissioner's motion to dismiss.

The judgment is affirmed.

In this opinion ROGERS, C. J., and PALMER, ZARELLA and EVELEIGH, Js., concurred.

[1] General Statutes § 13a-144 provides in relevant part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair . . . may bring a civil action to recover damages sustained thereby against the commissioner . . . ."

[2] The commissioner appealed from the denial of his motion to dismiss to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. "Despite the general rule that interlocutory rulings are not immediately appealable, the denial of a motion to dismiss based on a colorable claim of sovereign immunity is an appealable final judgment." *Cummings* v. *Dept. of Transportation*, 313 Conn. 197, 199 n.3, 96 A.3d 552 (2014).

[3] The commissioner appears to concede that these facts are undisputed.

[4] Several of Nicholas' friends were riding their bicycles along with him. Nicholas led the group when he moved to the sidewalk.

[5] The state right-of-way line extends just beyond the sidewalk. Thus, the sidewalk, culvert, and part of the driveway and lawn are all within the state right-of-way.

[6] At oral argument before this court, the commissioner appeared to challenge the department's responsibility for maintaining the culvert, for the first time in this case. We decline to consider this claim because it "is well settled that claims on appeal . . . cannot be raised for the first time at oral argument before the reviewing court." (Internal quotation marks omitted.) *Kramer* v. *Petisi*, 285 Conn. 674, 686 n.10, 940 A.2d 800 (2008).

[7] "To prove a breach of statutory duty under [§ 13a-144], the plaintiff must prove by a preponderance of the evidence: (1) that the highway was defective as claimed; (2) that the [commissioner] actually knew of the particular defect or that, in the exercise of [his] supervision of highways in the city, [he] should have known of that defect; (3) that the [commissioner], having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence." (Internal quotation marks omitted.) *Stotler* v. *Dept. of Transportation*, 142 Conn. App. 826, 835, 70 A.3d 114 (2013), aff'd, 313 Conn. 158, 96 A.3d 527 (2014).

[8] For defective conditions in sidewalks, local roads, and bridges maintained by municipalities, one may assert a highway defect claim under § 13a-149. Section 13a-149 imposes a duty on municipalities equivalent to the duty imposed on the state by § 13a-144. "There is no substantial difference in the duties imposed by [§§ 13a-144 and 13a-149] . . . ." *Comba* v. *Ridgefield*, 177 Conn. 268, 269–70, 413 A.2d 859 (1979). As such, case law arising under § 13a-149 is instructive with respect to claims brought against the state pursuant to § 13a-144. See, e.g., *McIntosh* v. *Sullivan*, supra, 274 Conn. 266 n.4.

[9] Although the facts are undisputed for purposes of the commissioner's appeal from the denial of his motion to dismiss, the state's ultimate liability under § 13a-144 nevertheless turns on the fact finder's determination with respect to whether Nicholas' travel on the sidewalk fell within the "[r]easonable latitude" afforded to travelers on the highway, or whether he had "forfeited [his] rights" under § 13a-144. *Hay* v. *Hill*, supra, 137 Conn. 290; see *Serrano* v. *Burns*, supra, 248 Conn. 429.

[10] In making this determination, we respectfully disagree with the dissent's focus on the fact that Nicholas was riding his bicycle against traffic "in a manner contrary to established highway rules and regulations," which, according to the dissent, resulted in a "self-created" exigency. The commissioner does not contend that it was improper for Nicholas to ride "against

traffic" before moving to the sidewalk, or otherwise argue that this fact affects our analysis of whether Nicholas may be considered a traveler on the highway.

[11] It is unclear from the record how "heavy" the traffic was on Route 113, or whether that traffic volume continued after Nicholas moved to the sidewalk.

[12] Nicholas did not state in his deposition whether he planned to return to the roadway. Photographs in the record reveal that Nicholas could have continued over a grassy area toward Cutspring Road when the sidewalk ended, had he not fallen into the culvert, or returned to the shoulder of Route 113 before turning left. We respectfully disagree with the dissent's contention that "Nicholas' exact trajectory upon departing Route 113 is ultimately irrelevant." This evidence is for the fact finder to weigh in determining whether Nicholas "turned aside from his journey for a purpose in no way connected with his passage over the highway," and whether exigent circumstances were present. *O'Neil* v. *New Haven*, supra, 80 Conn. 156. It is for this precise reason that the issue is more appropriate for consideration at trial. See *Conboy* v. *State*, supra, 292 Conn. 654 (issue of sovereign immunity could not be resolved on motion to dismiss because state's argument "turned on [the] particular resolution of [a] factual dispute" requiring "a full trial on the merits of the action").

[13] The dissent's suggestion that exigent circumstances were not present because Nicholas "voluntarily left Route 113 due to the heavy traffic" directly conflicts with this court's recognition that modern traffic may constitute an exigency requiring a traveler to depart from the immediate roadway. See *Ferreira* v. *Pringle*, supra, 255 Conn. 347; *Minacci* v. *Logudice*, 126 Conn. 345, 348, 11 A.2d 354 (1940); see also *Rusch* v. *Cox*, supra, 10 Conn. Supp. 526. As such, a fact finder could reasonably conclude that exigent circumstances forced Nicholas to depart from the roadway, thus rendering him a traveler on the highway for the purposes of § 13a-144. Again, we make no judgment as to the likeliness of this finding, and simply hold that a "critical factual dispute" prevents us from resolving the question of the trial court's jurisdiction at this juncture. *Conboy* v. *State*, supra, 292 Conn. 652.

[14] General Statutes (Rev. to 2011) § 14-286 (a) provides in relevant part: "Each person operating a bicycle upon and along a sidewalk or across any roadway upon and along a crosswalk shall yield the right-of-way to any pedestrian . . . . No person shall operate a bicycle upon or along a sidewalk or across a roadway upon and along a crosswalk if such operation is prohibited by any ordinance of any city, town or borough . . . ." See also General Statutes § 14-286a (b) ("[e]very person operating a bicycle solely by hand or foot power upon and along any sidewalk . . . shall be granted all of the rights and shall be subject to all of the duties applicable to pedestrians walking in such areas").

[15] We also note that the question of whether Nicholas could also have been deemed to be a traveler on the *sidewalk* when he fell into the culvert is irrelevant to our analysis. The plaintiffs do not allege a defect in the sidewalk, although they could have framed the alleged defect in this manner in an effort to invoke § 13a-149. See also footnote 8 of this opinion. Rather, the plaintiffs distinctly alleged a defect in the highway actionable against the state under § 13a-144. Thus, the relevant question is whether Nicholas was a traveler over the *highway* when he fell into the culvert. See *Tuckel* v. *Argraves*, supra, 148 Conn. 358.

[16] The dissent's concern that our holding will " 'eviscerate' " the state's sovereign immunity and "greatly increase the scope of its liability" under § 13a-144 is greatly exaggerated for at least three important reasons. First, not all bicyclists traveling on the sidewalk may conceivably be classified as travelers on the highway. If, for instance, a bicyclist never travels in the shoulder of the roadway itself, a jury may not be able to find that he or she was ever a traveler on the highway. Second, even if *all* bicyclists traveling on the sidewalk *are* characterized as travelers on the highway, the state will not be liable for most injuries that result from this situation. Municipalities, rather than the state, are generally responsible for maintaining most sidewalks, even those adjacent to state highways. See, e.g., *Hornyak* v. *Fairfield*, 135 Conn. 619, 621, 67 A.2d 562 (1949); *Moleske* v. *MacDonald*, 109 Conn. 336, 339, 146 A. 820 (1929); see General Statutes § 13a-144 (state only responsible for defects in sidewalks which commissioner has "duty . . . to keep in repair"); see also *Cartwright* v. *Frankel*, Superior Court, judicial district of Windham, Docket No. CV-94-0048749-S (March 19, 1996) (16 Conn. L. Rptr. 322) (bicyclist could not maintain action against commissioner for defective condition in sidewalk abutting state highway because,

as matter of law, commissioner "had no duty to maintain or repair the sidewalk"). Third, our holding is limited to the unique facts of this case, wherein a municipal sidewalk leads directly to a hidden unguarded culvert maintained by the state. Thus, our conclusion that factual issues need to be resolved by a fact finder to determine whether the state enjoys sovereign immunity in this case will not, as the dissent suggests, "invit[e] a plethora of highway defect claims brought by plaintiffs whose injuries have only dubious connections to actual state highway defects."

[17] Although the facts are undisputed for purposes of this appeal from the denial of the motion to dismiss, the state's liability nevertheless depends on a fact finder's ultimate determination with respect to whether the state reasonably should have expected the public to traverse the culvert area. See *McIntosh* v. *Sullivan*, supra, 274 Conn. 296 (*Katz, J.*, dissenting) ("[t]o the extent that there is a question in the present case as to whether the connection to the roadbed is sufficient . . . that is a question for the trier of fact"); *Serrano* v. *Burns*, supra, 248 Conn. 426 (" '[w]hether there is a defect in such proximity to the highway so as to be considered "in, upon, or near the traveled path" of the highway must be determined on a case-by-case basis after a proper analysis of its own particular circumstances, and is generally a question of fact for the jury, which will not be disturbed by this court unless the conclusion is one which could not be reasonably reached by the trier' ").

[18] We note that the commissioner does not argue that the culvert does not " 'obstruct or hinder' " travel over the sidewalk—and, incidentally, the highway—simply because the sidewalk ends before the culvert. *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 502–503. Accordingly, we focus on the commissioner's claim that the culvert is in an area unintended for public travel, and the state should not have reasonably expected members of the public to encounter it, because they would have to cross a private driveway and lawn to reach it. See *Horrigan* v. *Washington*, 144 Conn. App. 536, 545–46, 72 A.3d 1265 (jury reasonably concluded that storm drain in grassy area more than three feet from paved portion of road was not highway defect under § 13a-149; drain was in area "expected to be used by travelers, but not in a position so as to necessarily obstruct or hinder the common use of the road," contrasted with obstructions such as "a pothole or an exposed culvert in the paved portion" of the road [internal quotation marks omitted]), cert. denied, 310 Conn. 939, 83 A.3d 344 (2013).

[19] In light of *Hay*, we respectfully disagree with the dissent's contention that *Kozlowski* and *Chazen* provide "clear guidance" on this issue. See *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 502–504; *Chazen* v. *New Britain*, supra, 148 Conn. 353–54; *Hay* v. *Hill*, supra, 137 Conn. 287. Moreover, despite the dissent's contention to the contrary, we believe that *Hay* bears more than "some similarity" to the present case. In both *Hay* and the present case, the defect at issue was an unguarded culvert between eight to twelve feet from the road covered in shrubbery. *Hay* v. *Hill*, supra, 286–87. Thus, we look more aptly to *Hay* in making our determination, despite the dissent's characterization of *Kozlowski* as "most instructive." See *Kozlowski* v. *Commissioner of Transportation*, supra, 499.

We further disagree with the dissent's bases for distinguishing *Hay*. The dissent first notes that the culvert in *Hay* was unmarked, "despite the state's practice at that time of placing posts on the road side of culverts," and that, in the present case, the culvert had posts facing the road. However, the plaintiff in *Hay* approached the culvert from the road and, thus, the existence or absence of posts facing the road was at issue. *Hay* v. *Hill*, supra, 137 Conn. 286–87. Here, because Nicholas approached the culvert from the sidewalk, the issue in this case with respect to liability is whether posts or other warnings facing the sidewalk were necessary. As such, the lack of posts facing the road in *Hay* is an insufficient basis for distinguishing that case. Likewise, we fail to see how the fact that *Hay* involved a challenge to a jury verdict—as opposed to a motion to dismiss on the ground of sovereign immunity—affects our analysis. The ultimate issue—whether a jury could reasonably find that the hidden unguarded culvert constitutes a highway defect—is the same. See *Conboy* v. *State*, supra, 292 Conn. 654.

[20] As a preliminary matter, we note that it is undisputed that the culvert is located within the state right-of-way line. See *Serrano* v. *Burns*, supra, 248 Conn. 427 n.7 ("[w]hether the place of injury is within the state right-of-way line is the threshold inquiry in determining the state's liability, if any, under § 13a-144"); see also *Ferreira* v. *Pringle*, supra, 255 Conn. 350. The culvert itself is also maintained by the state and is part of the state highway system. But see footnote 6 of this opinion.

[21] We note that a police report completed on the night of the accident states that the owner of one of the residences near the culvert had informed town engineers about "the overgrown brush surrounding the . . . culvert as well as . . . [the] lack of guard rails on either side of it" two weeks before the accident.

[22] Although the dissent criticizes us for "[b]ypassing the well settled requirement that waivers of sovereign immunity should be strictly construed in favor of the state," we question whether the dissent has given sufficient consideration to the principles that: (1) when ruling on a motion to dismiss, the trial court "must consider the allegations of the complaint in their most favorable light"; (internal quotation marks omitted) *Kozlowski* v. *Commissioner of Transportation*, supra, 274 Conn. 501; (2) "in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged"; (internal quotation marks omitted) *Conboy* v. *State*, supra, 292 Conn. 650; (3) travelers are afforded "reasonable latitude . . . to meet the exigencies of travel"; *Hay* v. *Hill*, supra, 137 Conn. 290; and (4) "[w]hether there is a defect in such proximity to the highway so as to be considered in, upon, or near the traveled path of the highway must be determined on a case-by-case basis after a proper analysis of its own particular circumstances, and is generally a question of fact for the jury . . . ." (Internal quotation marks omitted.) *Baker* v. *Ives*, supra, 162 Conn. 300. In prioritizing the principle that waivers of sovereign immunity should be strictly construed in favor of the state, the dissent's reliance on *Stotler* v. *Dept. of Transportation*, 313 Conn. 158, 187–88, 96 A.3d 527 (2014), is misplaced. That principle did not govern the result in *Stotler. Stotler* involved an alleged defect in the *design* of a highway, and this court therefore emphasized, in concluding that the plaintiff's claim was barred by sovereign immunity, that it did not fall within the "narrow exception in [*Hoyt* v. *Danbury*, 69 Conn. 341, 37 A. 1051 (1897)] to the general rule precluding liability for *design defects*." (Emphasis added.) *Stotler* v. *Dept. of Transportation*, supra, 313 Conn. 174. Moreover, this court recognized in *Stotler* that, under the plaintiff's theory of liability, based simply on the highway's "steep downhill grade" and lack of safety measures, "virtually every design defect claim pertaining directly to the layout of the road would be actionable . . . . We simply cannot construe the defective highway statute in a manner that would eviscerate the *general rule precluding liability for design defect claims* under *Hoyt* and its progeny." (Citations omitted; emphasis added; footnote omitted; internal quotation marks omitted.) Id., 182. The present case, by contrast, does not involve a design defect, but rather, a hidden unguarded culvert maintained by the state at the end of a municipal sidewalk. As explained previously; see footnote 16 of this opinion; our holding that genuine issues of material fact exist as to the state's sovereign immunity in this unique case will not result in "virtually every" highway defect claim being actionable. *Stotler* v. *Dept. of Transportation*, supra, 313 Conn. 182.

[23] See also *Giarnese* v. *Litchfield*, Superior Court, judicial district of Litchfield, Docket No. CV-12-6006890-S (May 6, 2013) (56 Conn. L. Rptr. 97, 98) (motorcyclist's claim actionable under § 13a-149 because, although accident occurred on private property, road appeared to be extension of public road on which motorcyclist was traveling; motorists were "likely to mistake entry to [private] property as a continuation of a public street"); *Dawson* v. *New Haven*, Superior Court, judicial district of New Haven, Docket No. CV-08-5016831-S (October 26, 2009) (denying city's motion for summary judgment on § 13a-149 claim because issue of fact existed as to whether walkway was public sidewalk or private walkway, despite fact that walkway was on private property and installed by private developer).

[24] Cf. *Cuozzo* v. *Orange*, supra, 147 Conn. App. 164 (pothole in driveway of shopping center could not constitute highway defect under § 13a-149 because driveway led to private retail stores and was not in public area that "one may reasonably anticipate is open to all . . . a myriad of restrictions of use may limit travel to certain persons, certain types of use or certain types of vehicles . . . nothing in the record . . . suggests that the driveway was open for the unrestricted use of all public travelers generally"); *Read* v. *Plymouth*, 110 Conn. App. 657, 665–66, 955 A.2d 1255 (pedestrian's claim failed under § 13a-149 when he fell into dumpster at town waste station because access to station was restricted to residents, and thus, not generally open to public; station was restricted to permit holding residents, open during limited hours, and guarded by locked gate during off-hours), cert. denied, 289 Conn. 955, 961 A.2d 421 (2008).

[25] Contrary to the dissent's assertions, a jury could reasonably conclude that Nicholas' ride over the driveway and small patch of lawn was not a

conscious choice and intentional forgoing of his opportunity to return to Route 113, but rather, an inadvertent mistake, especially since it was dark. We do not "speculatively suggest," as the dissent asserts, that this interpretation of Nicholas' ride is the correct one; we simply use it to demonstrate that there are issues of fact that need to be decided by a fact finder in order to determine whether the state enjoys sovereign immunity from the plaintiffs' claim.

[26] Nicholas stated: "I was riding and I felt the sidewalk end. . . . I felt grass, and then I went into the ditch . . . ."

[27] In sum, the record has not been sufficiently developed for us to determine, as a matter of law, that Nicholas was *not* a traveler on the highway when he fell into the culvert, or that the culvert is *not* a highway defect. "[W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss . . . ." (Internal quotation marks omitted.) *Stotler* v. *Dept. of Transportation*, supra, 313 Conn. 187. Rather, an evidentiary hearing may be necessary to determine these "critical factual dispute[s]"; *Conboy* v. *State*, supra, 292 Conn. 652; or the trial court may "in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred." Id., 654 n.16. Thus, "we conclude that, at this stage of the proceedings, an unresolved factual dispute exists that renders consideration of the state's legal argument premature." Id., 645.