******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JENNIFER PETROCELLI *v.* CITY
OF SHELTON ET AL.
(AC 46773)

Moll, Westbrook and Eveleigh, Js.

*Syllabus*

The defendant state of Connecticut appealed from the trial court's judgment denying its motion to dismiss the count of the plaintiff's complaint asserted against it. The defendant claimed that the plaintiff's cause of action for personal injuries pursuant to statute (§ 13a-144) was barred by the doctrine of sovereign immunity because the defendant had abandoned that portion of the defective sidewalk where the plaintiff fell and, thus, the court lacked subject matter jurisdiction over her claim. *Held*:

The trial court properly denied the motion to dismiss because the question of abandonment involved a disputed issue of fact, which was critical to the determination of whether the court had subject matter jurisdiction, and the court had discretion to postpone resolution of that question until after a trial on the merits.

Argued November 14, 2024—officially released February 11, 2025

*Procedural History*

Action to recover damages for personal injuries sustained as a result of an allegedly defective state highway, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where United Illuminating Company was cited in as a defendant; thereafter, the court, *Frechette, J.*, granted the motions for summary judgment filed by the defendant Center Motorsports, LLC, et al.; subsequently, the court denied the motion to dismiss filed by the defendant state of Connecticut, and the defendant state of Connecticut appealed to this court. *Affirmed.*

*Kevin S. Coyne*, for the appellant (defendant state of Connecticut).

*Jeremy C. Virgil*, with whom was *Kyle D. Souza*, for the appellee (plaintiff).

*Matthew L. Studer*, with whom, on the brief, was *Jonathan D. Berchem*, for the appellee (named defendant).

*Opinion*

EVELEIGH, J. In this action brought, in part, pursuant to the state highway defect statute, General Statutes § 13a-144,[1] the defendant, the state of Connecticut,[2] appeals from the judgment of the trial court denying its motion to dismiss the claims asserted against it by the plaintiff, Jennifer Petrocelli, on the ground that they are barred by sovereign immunity.[3] On appeal, the state claims that the court improperly denied the motion to dismiss because it did not have a duty to maintain and repair the area where the alleged injury occurred and, thus, is entitled to sovereign immunity. We disagree and, accordingly, affirm the judgment of the trial court.

The plaintiff alleges the following facts. On January 11, 2020, at approximately 9:15 p.m., the plaintiff was walking on the sidewalk adjacent to Center Street in Shelton. Center Street is a public highway that is heavily traveled, and its adjacent sidewalks are open to and

[1] General Statutes § 13a-144, which serves as a waiver of the state's sovereign immunity for monetary claims seeking recovery for injuries caused by highway defects, provides in relevant part: "Any person injured in person or property through the neglect or default of the state . . . by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair . . . may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. . . ."

[2] The city of Shelton (city), United Illuminating Company, Barone Properties, LLC, and Center Motorsports, LLC, also were named as defendants in the plaintiff's complaint. The city is participating as an appellee in the present appeal. The court rendered summary judgment in favor of the remaining defendants, and they are not participating in this appeal.

[3] "Although the denial of a motion to dismiss generally is an interlocutory ruling that does not constitute an appealable final judgment, the denial of a motion to dismiss filed on the basis of a colorable claim of sovereign immunity is an immediately appealable final judgment." *Filippi* v. *Sullivan*, 273 Conn. 1, 6 n.5, 866 A.2d 599 (2005).

used by pedestrians on a regular basis. The plaintiff stepped into an open utility handhole[4] on the sidewalk in front of 61 Center Street, which caused her to fall. Consequently, the plaintiff sustained personal injuries and has a diminished capacity to earn a living. The plaintiff provided the state with written notice on March 23, 2020, advising the state of the injuries she sustained from the allegedly defective handhole.

The plaintiff commenced the present action in February, 2021. The operative complaint, filed on August 9, 2021, asserts five counts. The first count is a municipal highway defect claim against the city of Shelton (city) pursuant to General Statutes § 13a-149. The second count alleges that the plaintiff is entitled to relief against the state pursuant to § 13a-144. The third, fourth, and fifth counts sound in negligence and are directed, respectively, against two businesses that own property abutting the sidewalk where the plaintiff was injured and United Illuminating Company.[5]

On July 21, 2021, the state filed a motion to dismiss the second count of the operative complaint pursuant to Practice Book § 10-30 et seq., arguing that the plaintiff's claim did not fall within the waiver of sovereign immunity contained in § 13a-144. In its memorandum of law in support of its motion to dismiss, the state argued that it did not have a duty pursuant to § 13a-144 to maintain the sidewalk where the alleged incident occurred and, therefore, the court lacked subject matter jurisdiction over the plaintiff's claim.

---

[4] Merriam-Webster's Online Dictionary defines a "handhole" in relevant part as "a shallow form of manhole giving access to a top row of ducts in an underground electrical system." Merriam-Webster Online Dictionary, available at https://www.merriam-webster.com/dictionary/handhole (last visited February 3, 2025).

The plaintiff described the open handhole as a "hole/depression in the sidewalk with two large screws/bolts sticking up near its edges."

[5] The court rendered summary judgment in favor of the defendants named in these counts. See footnote 2 of this opinion.

On November 4, 2022, the plaintiff filed an objection to the state's motion to dismiss. On June 1, 2023, the plaintiff filed a supplemental objection to the state's motion to dismiss along with several exhibits. In the plaintiff's supplemental objection, she referenced the state's revised responses to the city's first request for admissions, which had been filed with the court on January 5 and March 23, 2023. In those responses, the state admitted that it owned the handhole located on the sidewalk directly in front of 61 Center Street.[6] Specifically, the state first admitted that the handhole was owned by the state "at some time prior to [January 11, 2020]," and then subsequently admitted that the handhole was owned by the state "from 1992 until [it] was taken out of service and abandoned in 1997." The state further admitted that the handhole contains an abandoned loop detection system, which was serviced by the state and controlled the traffic light at an intersection on Center Street.

In her supplemental objection, the plaintiff argued that, even if the state intended to abandon the handhole, it did not do so in a proper manner because it failed to remove the handhole. In support of her argument, the plaintiff cited deposition testimony from Arnold Ozols, an employee with the Department of Transportation (department) who supervises traffic signal maintenance and highway illumination. Ozols averred that if a handhole is abandoned, it should be removed and the ground should be "put . . . back to grade or patched."[7] The plaintiff also cited § 11.18.03 of the Standard Specifications for Roads, Bridges and Incidental Construction, Form 814A (1995),[8] as promulgated by the department, which relates to the removal and/or relocation of

---

[6] In its previous response to the plaintiff's request for admissions, the state had denied owning the handhole.

[7] Ozols' deposition testimony was included in the exhibits attached to the plaintiff's supplemental objection.

[8] The standard specifications also were included in the plaintiff's exhibits.

traffic signal equipment and states, among other things, that "[e]quipment shall be removed in such a manner as to cause no hazard to pedestrians," and, "[w]hen poles, foundations, etc. are removed, the hole shall be backfilled with clean fill material, which shall be compacted and the ground restored to a grade and condition compatible with the surrounding area."

On June 6, 2023, the city filed a memorandum in opposition to the state's motion to dismiss, along with several exhibits. The exhibits included an affidavit from Rimas Balsys, the city engineer, in which he averred that certain intersections on Center Street, "including all supporting equipment and wiring, are owned, controlled, and maintained by the [state]"; that, to the best of his knowledge, "the handhole contains an abandoned loop detection system"; and that "[t]he [c]ity never owned, maintained or controlled the subject handhol[e] utility box, its cover or the electrical wiring and utility components encapsulated therein."

The state subsequently filed its responses to the city's fourth request for admissions in which it admitted that, on January 14, 2020, the state received a notification from the Shelton Police Department about the handhole identified in the notice attached to the plaintiff's complaint. On that same date, the state put a cover on the handhole, but it advised the city at that time that it did not believe that the handhole was one maintained by the state. The state again admitted that it installed the handhole as part of an intersection redesign in 1992 but stated that the handhole was abandoned and taken out of service in 1997 and that the handhole remained within the confines of a sidewalk maintained by the city. The state further admitted that it did not have a copy of any written notice to the city advising it that the state intended to and/or planned to abandon the handhole.

On July 21, 2023, following a hearing held on July 19, 2023, the court, *Frechette, J.*, issued a written order denying the state's motion to dismiss. The court concluded that the issue of abandonment is a question of fact for the jury to decide and, therefore, rejected the state's argument that it is not liable as a matter of law. The court explained: "As pointed out in the plaintiff's supplemental objection . . . the [state] admits that it owned the handhole some time prior to [January 11, 2020] . . . until it was taken out of service and abandoned in 1997. It is also not disputed that, on January 14, 2020, three days after the plaintiff's fall, the [state] exercised control over the handhole by replacing the broken cover with a new cover that very well fit the handhole. Having admitted ownership of the handhole, the question of abandonment is clearly a question of fact which the jury will have to decide at trial. Moreover, the state's subsequent repair of the handhole belies its claim of abandonment. Accordingly, the [state's] motion to dismiss is denied." (Internal quotation marks omitted.) This appeal followed.

We begin by setting forth the relevant principles of law and the applicable standard of review. "It is the established law of our state that the state is immune from suit unless the state, by appropriate legislation, consents to be sued. . . . The legislature waived the state's sovereign immunity from suit in certain prescribed instances by the enactment of § 13a-144. . . . The statute imposes the duty to keep the state highways in repair upon . . . the [C]ommissioner [of Transportation] . . . and authorizes civil actions against the state for injuries caused by the neglect or default of the state . . . by means of any defective highway . . . . There being no right of action against the sovereign state at common law, the [plaintiff] must first prevail, if at all, under § 13a-144. . . .

"[T]he doctrine of sovereign immunity implicates [a court's] subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court must consider the allegations of the complaint in their most favorable light . . . including those facts necessarily implied from the allegations . . . ." (Citations omitted; internal quotation marks omitted.) *Giannoni* v. *Commissioner of Transportation*, 322 Conn. 344, 348–49, 141 A.3d 784 (2016).

"[I]f the complaint is supplemented by undisputed facts established by [1] affidavits submitted in support of the motion to dismiss . . . [2] other types of undisputed evidence . . . and/or [3] public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts] . . . .[9]

"Conversely, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a

---

[9] "Other types of undisputed evidence that a trial court may consider in deciding a motion to dismiss includes deposition testimony submitted in support or opposition thereto." *Dudley* v. *Commissioner of Transportation*, 191 Conn. App. 628, 635 n.6, 216 A.3d 753, cert. denied, 333 Conn. 930, 218 A.3d 69 (2019).

hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties. . . . The trial court may [also] in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred." (Citation omitted; footnote in original; internal quotation marks omitted.) *Dudley* v. *Commissioner of Transportation*, 191 Conn. App. 628, 635–36, 216 A.3d 753, cert. denied, 333 Conn. 930, 218 A.3d 69 (2019).

"We review a trial court's denial of a motion to dismiss on the ground of sovereign immunity, based on an application of § 13a-144, de novo. . . . [W]hether a highway is defective may involve issues of fact, but whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law over which we exercise plenary review. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Giannoni* v. *Commissioner of Transportation*, supra, 322 Conn. 350.

In the present case, we conclude that the court properly denied the state's motion to dismiss on the ground that the question of whether the state abandoned the handhole involves a disputed issue of fact that is critical to the determination of whether the court has subject matter jurisdiction pursuant to § 13a-144.

Section 13a-144 provides in relevant part that "[t]he commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by

the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. . . .''

The parties have cited no case law, and we have found none, in which this court or our Supreme Court has examined the issue of abandonment in the context of § 13a-144. Nevertheless, in other circumstances, this court has repeatedly concluded that the issue of abandonment is a question of fact. See, e.g., *Montanaro* v. *Aspetuck Land Trust, Inc.*, 137 Conn. App. 1, 21, 48 A.3d 107 (abandonment of highway in context of claim for easement), cert. denied, 307 Conn. 932, 56 A.3d 715 (2012); see also *Bueno* v. *Firgeleski*, 180 Conn. App. 384, 396, 183 A.3d 1176 (2018) (abandonment of easement).

Because the question of whether the state abandoned the handhole involves a critical factual dispute, the court had the discretion to postpone the resolution of that issue until a trial on the merits occurred. "[W]here a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits." (Citations omitted; footnote omitted.) *Conboy* v. *State*, 292 Conn. 642, 652–53, 974 A.2d 669 (2009). The trial court "may [also] in its discretion choose to postpone resolution of the jurisdictional question until the parties complete further discovery or, if necessary, a full trial on the merits has occurred." Id., 653 n.16; see also *Giannoni* v. *Commissioner of Transportation*, supra, 322 Conn. 369 n.27 (" 'critical factual dispute[s]' " existed regarding whether culvert was highway defect and whether child was traveler on highway for purposes

of § 13a-144, which prevented court from resolving jurisdictional question).

On appeal, the state claims that the court improperly denied its motion to dismiss because the "uncontroverted" evidence that it had not used or maintained the handhole since 1997 established that it had abandoned the handhole.[10] The state argues that the court improperly relied on the evidence of its remedial repair of the handhole, subsequent to the plaintiff's alleged fall, as an indication that it did not abandon the handhole. The state argues that such evidence is relevant to a common-

---

[10] To the extent that the state also argues that it did not have a duty to maintain the handhole, regardless of whether it was abandoned, because it was located on a sidewalk that is not within the state highway system, we are not persuaded.

This court addressed a similar issue in *Dudley* v. *Commissioner of Transportation*, supra, 191 Conn. App. 641–46, which involved an allegedly defective manhole cover. In *Dudley*, the trial court rejected the state's argument that it did not have a duty pursuant to § 13a-144 to maintain or repair the sidewalk on which the plaintiff allegedly was injured, determining that the plaintiff's claim was not that the state had a duty to maintain the sidewalk but, instead, that the state had a duty to maintain the allegedly defective manhole cover. Id., 634. On appeal, this court agreed with the trial court that the case "is not a sidewalk maintenance case [but, instead] is a state highway storm drain system maintenance case." (Internal quotation marks omitted.) Id., 644. This court ultimately concluded that the allegedly defective manhole cover was within the definition of "highway defect" pursuant to § 13a-144, as the record reflected that the allegedly defective manhole cover was located near the traveled portion of the state highway, arguably within the state's right-of-way line, served state owned and operated highways, and existed solely to service the state highway. Id., 646.

In the present case, similar to *Dudley*, the plaintiff's claim is not that the sidewalk was defective but, rather, that the handhole was defective. At oral argument before this court, the state seemed to acknowledge that *Dudley* controls this issue. Specifically, the state acknowledged that, faced with *Dudley*, it could not argue that it did not have a duty to maintain the handhole if it had not abandoned the handhole. Similarly, the state conceded that, if the handhole was still in use, it would have had a duty to maintain the handhole, even though it is located on a sidewalk. The state also admitted that the sidewalk where the plaintiff fell was located within the state's right-of-way line. See *Ferreira* v. *Pringle*, 255 Conn. 330, 350–51, 766 A.2d 400 (2001) (state liability applied to defect embedded within shoulder of road seven feet from paved area within state's right-of-way line).

law negligence claim, not a statutory claim pursuant to § 13a-144. The state also contends that the plaintiff's claim that the state's method of abandonment was improper or negligent similarly is not relevant to a cause of action under § 13a-144.[11] We are not persuaded.

Section 13a-144 is silent as to the manner in which the state may establish that it abandoned a highway, or part thereof, pursuant to that provision. Accordingly, we look to common-law principles governing abandonment for guidance. See, e.g., *Escobar-Santana* v. *State*, 347 Conn. 601, 618, 298 A.3d 1222 (2023) (because legislature did not directly address question in statutory language, court looked to state's common law for additional guidance).

"While nonuse of [a] highway may, in some circumstances, conclusively establish the intent to abandon . . . where abandonment is found there most frequently is some affirmative act of an intention to abandon." (Citation omitted.) *Montanaro* v. *Aspetuck Land Trust, Inc.*, supra, 137 Conn. App. 21. "[A]bandonment implies . . . a voluntary and intentional renunciation, but the intent may be inferred as a fact from the surrounding circumstances . . . . Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon . . . but nonuser, as of an easement, or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration

---

[11] The state argues that the plaintiff's claim that the state did not properly abandon the handhole would, instead, arguably be a basis for a claim to the Claims Commissioner. See, e.g., *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 443 n.6, 195 A.3d 664 (2018) (Claims Commissioner may grant party permission to sue state for negligence pursuant to General Statutes § 4-141 et seq.).

but also upon its character and the accompanying circumstances." (Internal quotation marks omitted.) *Nichols* v. *Oxford*, 182 Conn. App. 674, 680–81, 191 A.3d 219, cert. denied, 330 Conn. 912, 193 A.3d 560 (2018).

On the basis of the foregoing, the fact finder[12] may ultimately find that the state's nonuse of the handhole, from 1997 until the alleged incident in 2020, reflected its intention to abandon the handhole. The state, however, has provided no legal support for its argument that its nonuse of the handhole during that time *conclusively* established, *as a matter of law*, that it abandoned the handhole. The fact finder may find, after further factual development, that the state's nonuse of the handhole should have been accompanied by an affirmative act in order to indicate an intent to abandon, or that its failure to remove the handhole and its remedial repair of the handhole,[13] as currently reflected in the plaintiff's exhibits, demonstrate that it did not abandon the handhole. There is, again, no legal support for the state's contention that the fact finder would be prohibited from considering such evidence in its analysis.

At this stage of the proceedings, the arguments advanced by the plaintiff and the city in opposition to the state's motion to dismiss, along with the exhibits included in support thereof, sufficiently placed into dispute the issue of abandonment, such that the court had

---

[12] In the event that there is a jury trial, the factual question of whether the state abandoned the handhole shall be submitted to the jury by way of a special interrogatory, and the court shall reserve for itself the ultimate question of whether, on the basis of the facts found, it has jurisdiction over the plaintiff's claim. See *Sanchez* v. *Hartford*, 227 Conn. App. 771, 775, 322 A.3d 1108 (court submitted interrogatories to jury to make factual findings and reserved for itself question of whether governmental immunity would apply to facts presented), cert. denied, 350 Conn. 922, 325 A.3d 1093 (2024).

[13] Section 4-7 (a) of the Connecticut Code of Evidence provides in relevant part that evidence of subsequent remedial measures "is admissible when offered to prove controverted issues such as ownership, control or feasibility of precautionary measures."

discretion to postpone resolution of the jurisdictional question until after a full trial on the merits has occurred. See *Conboy* v. *State*, supra, 292 Conn. 653 n.16. Accordingly, we conclude that the court properly denied the state's motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.